[825 NYS2d 55]

Florenta Caprer et al., Appellants, v Richard Nussbaum et al., Respondents.

Second Department, October 17, 2006

**APPEARANCES OF COUNSEL**

*Shelley Thompson,* Sunnyside, for appellants.

*Silverman Perlstein & Acampora, LLP,* New York City (*Robert J. Ansell* of counsel), for Richard Nussbaum and others, respondents.

*Perez, Furey & Varvaro,* Uniondale (*Keith J. Frank* of counsel), for *Michael Kondrat,* respondent.

**OPINION OF THE COURT**

SPOLZINO, J.

This appeal presents several significant issues of apparent first impression with respect to the relationship between condominium unit owners, on the one hand, and the sponsor and other parties involved in the conversion and operation of the

condominium, on the other. It requires that we decide, principally, three questions:

(1) Does the owner of a condominium unit have standing to sue to recover damages for a wrong to the condominium, either individually, based upon the alleged harm to his or her individual interest in the common elements and finances of the condominium, or derivatively, on behalf of the condominium?

(2) Does the managing agent of the condominium or its accountant owe a fiduciary duty to the owners of the condominium units?

(3) May a unit owner bring an action against the condominium's accountant for professional negligence in connection with the accounting services provided to the condominium?

In addition, we must determine whether the Supreme Court correctly dismissed the plaintiffs' claims sounding in breach of contract, fraud, and tortious interference with prospective economic advantage.

## Background

These issues arise in the context of an action brought by the owners of several units in the Royal Kent Condominium (hereinafter the condominium), which is located in Sunnyside, Queens. In 1987 the building, which had previously been composed of rental units owned by the defendant Morjay Realty Corporation (hereinafter the owner), was converted into a condominium pursuant to a conversion sponsored by the defendant Morjay Realty Company, LLC (hereinafter the sponsor). The defendants Richard Nussbaum and Eric Nussbaum (hereinafter the Nussbaums) are the principals of the sponsor.

Upon the conversion, the Nussbaums became members of the condominium's board of managers, as did the defendant Michael Kondrat, who was a nonresident unit owner. (The Nussbaums and Kondrat, when referred to together, will hereinafter be identified as the board-member defendants. Where appropriate, the board-member defendants, together with the owner and the sponsor, will hereinafter be referred to collectively as the condominium defendants.) The Nussbaums also allegedly own and operate the defendants Nussbaum Management Corporation, Nussbaum Realty Corporation, and DHN Management, Inc. (hereinafter collectively referred to as the managing agent defendants), each of which has acted as the managing agent of the condominium at various times since the conversion. The defendants Nussbaum Realty Company, LLC, and Nussbaum

Associates Company, LLC (hereinafter collectively referred to as the unrelated Nussbaum entities) are other entities allegedly owned and controlled by the Nussbaums. The defendant Gould, and the firm in which he is a principal—the defendant Glickman & Gould, LLP (hereinafter collectively referred to as the accountants)—performed accounting services for the condominium.

Of the nine causes of action, six are brought individually by the plaintiffs and three are brought derivatively on behalf of the condominium. Individually, the plaintiffs allege causes of action sounding in breach of contract, tortious interference with prospective economic advantage, fraud, and breach of fiduciary duty. As against the accountants, the plaintiffs individually allege intentional, negligent, or reckless failure to report the condominium's financial status accurately, as well as fraud. Derivatively, on behalf of the condominium, the plaintiffs assert causes of action against the condominium defendants alleging breach of fiduciary duty, against the condominium defendants and managing agent defendants alleging waste and gross mismanagement of condominium property, and against the accountants alleging professional negligence.

When one of the plaintiffs, Florenta Caprer, moved for a preliminary injunction to, among other things, prohibit the defendants from spending condominium funds for other than certain purposes during the pendency of this action, all of the defendants collectively cross-moved for summary judgment dismissing the amended complaint. The Supreme Court denied the motion for injunctive relief and granted the cross motion for summary judgment in most respects, allowing to stand only so much of the first cause of action as alleged a breach of contract by the sponsor and so much of the fourth cause of action as alleged a breach of fiduciary duty by the board-member defendants. All of the remaining causes of action asserted in the complaint were dismissed. The plaintiffs appeal from so much of the order as granted, in part, the defendants' cross motion for summary judgment.

## Capacity and Standing to Sue

The cross motion for summary judgment first asserted that the plaintiffs were without capacity and standing to bring this action. Although related, these are distinct concepts (*see Silver v Pataki*, 96 NY2d 532, 537 [2001]). Capacity "is a threshold question involving the authority of a litigant to present a griev-

ance for judicial review" (*Matter of Town of Riverhead v New York State Bd. of Real Prop. Servs.*, 5 NY3d 36, 41; *see Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148, 155 [1994]). Standing to sue requires an interest in the claim at issue in the lawsuit that the law will recognize as a sufficient predicate for determining the issue at the litigant's request (*see New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 211 [2004]). "Without both capacity and standing, a party lacks authority to sue" (*Matter of Graziano v County of Albany*, 3 NY3d 475, 479 [2004]).

Because the plaintiffs here are natural persons, there is no doubt that they have capacity to sue and be sued as individuals. Hence, the relevant inquiry with respect to the claims they assert individually is whether their status in relation to each asserted claim permits them to present some or all of their grievances for judicial review. The issue in that regard is, therefore, one of standing. By contrast, the ability of the plaintiffs to assert claims derivatively, i.e., as persons acting on behalf of the condominium as a result of their respective interests in the common elements, depends upon whether the plaintiffs have "authority to sue" on that basis (*Silver v Pataki, supra* at 537). The issue in that regard is thus one of capacity.

## A. Standing to Assert Individual Claims

A plaintiff generally has standing only to assert claims on behalf of himself or herself. Although there are situations in which representative or organizational standing is permitted (*see* CPLR 1004; *Rudder v Pataki*, 93 NY2d 273, 278 [1999]; *Matter of Dairylea Coop. v Walkley*, 38 NY2d 6, 9 [1975]), one does not, as a general rule, have standing to assert claims on behalf of another (*see Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773 [1991]; *Matter of Hebel v West*, 25 AD3d 172, 175 [2005]). As explained by the Court of Appeals:

> "Whether a person seeking relief is a proper party to request an adjudication is an aspect of justiciability which, when challenged, must be considered at the outset of any litigation (*Matter of Dairylea Coop. v Walkley*, 38 NY2d 6, 9). Standing is a threshold determination, resting in part on policy considerations, that a person should be allowed access to the courts to adjudicate the merits of a particular dispute that satisfies the other justiciability criteria (*see*, Comment, *Standing of Third Parties to Chal-*

*lenge Administrative Agency Actions,* 76 Cal L Rev 1061, 1067-1068 [1988]; *see also, Warth v Seldin,* 422 US 490, 498)'' (*Society of Plastics Indus. v County of Suffolk, supra* at 769).

The Court of Appeals has defined the standard by which standing is measured, explaining that a plaintiff, in order to have standing in a particular dispute, must demonstrate an injury in fact that falls within the relevant zone of interests sought to be protected by law (*see Matter of Fritz v Huntington Hosp.,* 39 NY2d 339, 346 [1976]). Specifically, this familiar two-part test requires a plaintiff first to establish that he or she will actually be harmed by the challenged action, and that the injury is more than conjectural. Second, the injury a plaintiff asserts must fall within the zone of interests or concerns sought to be promoted or protected by the statutory provision or recognized common-law relationship pursuant to which a defendant has acted (*see New York State Assn. of Nurse Anesthetists v Novello, supra* at 211; *Mahoney v Pataki,* 98 NY2d 45, 52 [2002]; *Society of Plastics Indus. v County of Suffolk,* 77 NY2d 761, 773 [1991]; *Matter of Colella v Board of Assessors of County of Nassau,* 95 NY2d 401, 409-410 [2000]; *Gifford v Guilderland Lodge, No. 2480, B.P.O.E.,* 272 AD2d 721, 723 [2000]).

The individual claims asserted by the plaintiffs here arise out of the plaintiffs' interest in the common elements of the condominium. Condominium ownership is a hybrid form of real property, created by statute (*see* Real Property Law art 9-B [§ 339-d *et seq.*] [hereinafter the Condominium Act]). Pursuant to the Condominium Act, each owner holds a real property interest in his or her unit and its appurtenances (*see* Real Property Law § 339-g), which consists of an exclusive possessory interest in the unit (*see* Real Property Law § 339-h) and an undivided interest in the common elements of the condominium (*see* Real Property Law § 339-i; *Murphy v State of New York,* 14 AD3d 127, 132-133 [2004]; *Schoninger v Yardarm Beach Homeowners' Assn.,* 134 AD2d 1, 5-6 [1987]; *Kaufman & Broad Homes of Long Is. v Albertson,* 73 Misc 2d 84, 84-85 [1972]; *see also Hidden Ridge At Kutsher's Country Club Homeowner's Assn. v Chasin,* 289 AD2d 652, 653 [2001]; *Frisch v Bellmarc Mgt.,* 190 AD2d 383, 387 [1993]). The unit owners also have a mutual interest in the ''common profits and expenses'' of the condominium, which are ''distributed among, and . . . charged to,'' respectively, the owners ''according to their respective common interests'' (Real Property Law § 339-m).

On the basis of this ownership interest, each unit owner, therefore, has an interest, either possessory or monetary or

both, that potentially suffers "injury in fact" as a result of harm to the common elements or common funds of the condominium. In addition to injury, however, standing requires that the law will recognize the injured party, here the individual unit owners, as persons who may seek redress for that injury, in this case, damage to the common interest. That element of the standing equation is lacking here.

With respect to their common interest in the condominium, unit owners share an undivided interest in real property (*see Duffy v Duffy,* 21 AD3d 928, 929 [2005]), and therefore stand essentially in the same relationship to each other as tenants-in-common (*see Willis v Sterling,* 224 App Div 647, 649 [1928]). The distinguishing characteristic of a tenancy-in-common is the right of each cotenant to use and enjoy real property as a sole owner of the property, provided that the other cotenants are not thereby excluded from similar use and enjoyment (*see generally Butler v Rafferty,* 100 NY2d 265, 269 [2003]). A tenant-in-common may therefore bring an ejectment action or a summary proceeding to recover possession of the real property individually, based upon his or her undivided possessory interest (*see* RPAPL 621, 721; *Burack v I. Burack, Inc.,* 128 Misc 2d 324, 325 [1985]; *King v Schwartz,* 21 Misc 2d 286 [1959]; *Kristel v Steinberg,* 188 Misc 500, 514 [1947]). The rights of a tenant-in-common do not extend, however, to suing individually for damages to the common interest. For that, it is necessary that all of the tenants-in-common join in the complaint (*see Eckerson v Village of Haverstraw,* 6 App Div 102 [1896], *affd* 162 NY 652 [1900]; *see also Java Lake Colony v Institute of Sisters of St. Joseph of Diocese of Buffalo,* 262 App Div 808; *McPhillips v Fitzgerald,* 76 App Div 15, 23-24 [1902]; *cf. Brooklyn Trust Co. v City of New York,* 198 App Div 595, 601 [1921]).

The applicability of this restriction, developed in the context of tenancies-in-common, to the joint interest established by condominium ownership, is confirmed by its consistency with the nature of condominium management. Despite the undivided nature of the unit owners' interest, the unit owners have no direct control over either the common elements or the finances of the condominium. Rather, exclusive authority to manage the common elements and joint finances of the condominium is vested in the board of managers (*see* Real Property Law § 339-e [9]; § 339-v [1] [a]). As an incident of such control, the board of managers is also authorized by the Condominium Act to sue for any injury to the common elements on behalf of two or more

unit owners (*see* Real Property Law § 339-dd; *Residential Bd. of Mgrs. of Zeckendorf Towers v Union Sq.-14th St. Assoc.,* 190 AD2d 636 [1993]).

The statute is silent as to whether the grant of authority to the board of managers deprives a unit owner of a similar right. Thus, while it is established that Real Property Law § 339-dd does not preclude an individual unit owner from suing the sponsor or the board of managers for wrongs to the unit owner's interest in his or her individual unit, because such actions seek to enforce a right unique to the individual owner (*see 511 W. 232nd Owners Corp. v Jennifer Realty Co.,* 98 NY2d 144, 151 [2002]; *Koatz v 1776 Second Ave. Assoc.,* 244 AD2d 201, 201-202 [1997]; *cf. Board of Mgrs. of Fairways at N. Hills Condominium v Fairway at N. Hills,* 193 AD2d 322 [1993]), whether the statute precludes a unit owner from suing individually for damages to the common interest is an open question.

Those jurisdictions that have addressed the standing of individual condominium unit owners directly have interpreted similar statutory provisions to confer exclusive capacity upon the board or association to sue on behalf of the condominium (*see Poulet v H.F.O., L.L.C.,* 353 Ill App 3d 82, 94-95, 817 NE2d 1054, 1064 [2004]; *Cigal v Leader Dev. Corp.,* 408 Mass 212, 217-218, 557 NE2d 1119, 1122 [1990]; *Siller v Hartz Mtn. Assoc.,* 93 NJ 370, 383, 461 A2d 568, 575 [1983]; *Starfish Condominium Assn. v Yorkridge Serv. Corp., Inc.,* 295 Md 693, 705-706, 708 n 2, 458 A2d 805, 811-812, 813 n 2 [1983]; *see also Frantz v CBI Fairmac Corp.,* 229 Va 444, 450-451, 331 SE2d 390, 395 [1985]; *cf. Stony Ridge Hill Condominium Owners Assn. v Auerbach,* 64 Ohio App 2d 40, 44, 410 NE2d 782, 785-786 [1979]; *but see Rogers & Ford Constr. Corp. v Carlandia Corp.,* 626 So 2d 1350, 1354-1355 [Fla 1993]; *Jablonsky v Klemm,* 377 NW2d 560, 568-569 [ND 1985]). Even without a clear statutory mandate, however, consistency with the common-law rule precluding individual actions to recover damages with respect to jointly-owned property would suggest, however, that individual unit owners be precluded from doing so.

We addressed a similar, although not identical, issue in *Murphy v State of New York* (14 AD3d 127, 132-133 [2004]), in which we held that individual condominium unit owners could not recover consequential damages from a government entity that condemned common elements of a condominium complex. Although we placed great emphasis, in reaching that conclusion, on the bylaws of the particular condominium in issue, we nevertheless reasoned that

"[t]he claimant has no right to the exclusive use of common elements (other than her irrevocably restricted footprint common elements), and thus her loss of any portion of the common elements may not give rise to an individual claim for consequential damages greater than, or different from, that sustained by her fellow home owners" (*Murphy v State of New York, supra,* 14 AD3d at 132).

By the same reasoning, the individual unit owners here have no standing to sue individually for injury to the common elements or finances.

To preclude individual claims with respect to damage to the common elements also makes sense as a practical matter. Since any recovery in such an action by an individual unit owner would necessarily be limited to the owner's individual fractional interest, allowing such individual suits would likely lead to duplicative, piecemeal litigation of such issues. Recognizing such standing would also engender potential conflicts between suits initiated by the board of managers and those initiated by individual owners. In light of these considerations, we conclude that the owner of an individual condominium unit is without standing to assert a claim for damages to the common interest.

## B. Capacity to Assert Derivative Claims

■ Whether a unit owner may assert a claim derivatively on behalf of the condominium presents a question of capacity. A derivative action proceeds not on the basis of any individual right, but as an assertion of the interest of the entity by one or more of its owners or members when the management of the entity fails to act to protect that interest (*see Abrams v Donati,* 66 NY2d 951 [1985]; *see also* Prunty, *The Shareholders' Derivative Suit: Notes on Its Derivation,* 32 NYU L Rev 980, 989 [1957]). In the corporate context, where a wrong has been committed by corporate officers, directors or managers that adversely affects the corporation (*see Abrams v Donati, supra,* 66 NY2d at 953-954; *Elenson v Wax,* 215 AD2d 429 [1995]), and the corporation fails to act in its own best interest, the derivative action permits a shareholder to protect his or her interest by asserting the cause of action on the corporation's behalf (*see* 2 White, New York Business Entities ¶ B626.01 [14th ed]; Prunty, *supra* at 991).

Statutory authority to bring a derivative action is found in Business Corporation Law § 626, the Not-For-Profit Corpora-

tion Law (*see* N-PCL 623) and the Partnership Law (*see* Partnership Law § 115). As a result, the capacity of shareholders in a cooperative apartment building to bring a derivative action is without question, since cooperatives are organized as corporations under the Business Corporation Law (*see Fe Bland v Two Trees Mgt. Co.*, 66 NY2d 556, 567 [1985]). None of these statutes apply to condominiums, however, and the Condominium Act is silent with respect to the existence of such a right. Thus, even though a condominium operates in much the same manner as a cooperative apartment (*see Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530, 536 [1990]; *Schoninger, supra* at 6), the owners of condominium units have no statutory entitlement to bring a derivative action because condominiums are not organized pursuant to these statutes.

The derivative action, however, is not solely a creature of statute. Rather, the derivative action originated at common law as an equitable proceeding by which shareholders could assert claims necessary to protect their interest in a corporation (*see Cohen v Beneficial Industrial Loan Corp.*, 337 US 541, 548-549 [1949], cited by *Larsen v Island Devs., Ltd.*, 769 So 2d 1071, 1072 [Fla App 2000]; *see also Brinckerhoff v Bostwick*, 88 NY 52, 59 [1882], *appeal dismissed* 106 US 3 [1882]; *Hawes v Oakland*, 104 US 450, 452 [1881]; *Koral v Savory, Inc.*, 276 NY 215, 218 [1937]; *Robinson v Smith*, 3 Paige Ch 222, 232 [1832]; *Strain v Seven Hills Assoc.*, 75 AD2d 360, 365 [1980]; *Hichens v Congreve*, 4 Russ 562, 38 Eng Rep 917 [1828]; *see generally* 2 White, New York Business Entities ¶ B626.01 [14th ed]; 15 NY Jur 2d, Business Relationships § 1144), even in the absence of statutory authority to do so. In light of this history, the absence of a statute conferring on the owners of condominium units the authority to bring a derivative action is not necessarily fatal to the plaintiffs' derivative claims.

From its inception, the basis of the corporate derivative action has been the fiduciary relationship between shareholders and directors (*see Strain v Seven Hills Assoc., supra; see also Klebanow v New York Produce Exch.*, 344 F2d 294, 298 [1965]). The action is predicated on the historical power of the courts to provide a procedural avenue of relief to shareholders (*see Riviera Congress Assoc. v Yassky*, 18 NY2d 540, 547 [1966]; *Prunty, supra* at 989), and the capacity to bring a derivative action has been recognized, without statutory authority, in those circumstances that demand such relief (*see Brinckerhoff v Bostwick, supra; Koral v Savory, Inc., supra; Riviera Congress Assoc. v*

*Yassky, supra; Velez v Feinstein,* 87 AD2d 309 [1982]). "[T]he origin of the derivative suit, as indeed of any [other] nonstatutory type of action, lies in judicial recognition of a new wrong or maladjustment for which preexisting legal procedures proved more or less inadequate" (*Prunty, supra* at 992).

Thus, in situations outside the corporate context, but involving a trustee-beneficiary relationship, New York courts have allowed beneficiaries to bring derivative actions despite the lack of statutory authority (*see Velez v Feinstein, supra; Brinckerhoff v Bostwick, supra; Riviera Congress Assoc. v Yassky, supra* at 547). In *Velez,* for example, the beneficiaries of a trust were permitted to commence a derivative action on behalf of the trust because individual suits were entirely impracticable and circumstances demanded that the beneficiaries be able to sue to resolve the matter properly (*see Velez v Feinstein, supra* at 311).

Limited partners have been accorded the same status, despite the fact that there was, initially, some controversy as to whether an individual limited partner could sue on behalf of the partnership (*see generally Strain v Seven Hills Assoc., supra* at 367; *see also Klebanow v New York Produce Exch., supra* at 298). Although it was initially determined, in *Millard v Newmark & Co.* (24 AD2d 333 [1966]), that they could not, the position of the *Millard* dissent, that permitting the derivative form of action was within the court's historic power to allow different forms of relief when the circumstances so demanded (*id.* at 343-344), was ultimately vindicated by the Court of Appeals in *Riviera Congress Assoc. v Yassky* (*supra* at 547-548), where the Court held that an action on behalf of a limited partnership can be brought derivatively. Only thereafter did the Legislature amend the governing legislation to provide statutory authority for such actions (Partnership Law § 115, as amended by L 1968, ch 496, § 2; *see Strain, supra* at 367).

Not-for-profit corporations present another such example. Even before the enactment of the current statute expressly permitting derivative actions on behalf of such entities (*see* N-PCL 623), the Court of Appeals recognized the power of the courts to permit a derivative claim even in the absence of statutory authority (*see Brinckerhoff v Bostwick, supra* at 59; *Whalen v Strong,* 230 App Div 617 [1930]; 6 White, New York Business Entities ¶ N623.01 [14th ed]). The Legislature's subsequent enactment of a law permitting such actions was viewed as restricting, rather than enabling, the right that the courts had already recognized (*id.*).

Limited liability companies seem to be the one exception thus far to judicial recognition of the authority to bring a derivative action. Although at least one federal court in New York has recognized such a right, relying on *Klebanow* (*see Weber v King,* 110 F Supp 2d 124, 130-132 [ED NY 2000]), we have held, without elaboration, that a member of a limited liability company has no right to bring a derivative action on behalf of the company (*see Hoffman v Unterberg,* 9 AD3d 386, 389 [2004]). In the case of limited liability companies, however, a provision permitting derivative actions was deleted by the Legislature during its consideration of the statute (*see Schindler v Niche Media Holdings,* 1 Misc 3d 713, 716 [2003]). Such legislative history as is available with respect to the Condominium Act, however, reflects no basis upon which it can be concluded that the Legislature intended to withhold the capacity to bring a derivative action from the owners of condominium units.

Critically, the condominium presents a situation no different than those in which the ability to bring a derivative action has been recognized. Like the management of a corporation or the general partner in a limited partnership, the members of the board of managers of a condominium owe a fiduciary duty to the individual unit owners in their management of the common property (*see Board of Mgrs. of Acorn Ponds at N. Hills Condominium I v Long Pond Invs.,* 233 AD2d 472, 473 [1996]; *Board of Mgrs. of Whispering Pines at Colonial Woods Condominium II v Whispering Pines Assoc.,* 204 AD2d 376 [1994]; *Board of Mgrs. of Fairways at N. Hills Condominium v Fairway at N. Hills, supra,* 193 AD2d at 323). The same factors that caused the courts to fashion the derivative action procedure for shareholders and limited partners thus apply to condominium unit owners. All are owners of fractional interests in a common entity run by managers who owe them a fiduciary duty that requires protection. Condominium unit owners are, therefore, entitled to the same consideration by the courts as the litigants in those situations in which the courts have historically allowed derivative actions to proceed, independent of any statutory authority.

Those jurisdictions that have considered the issue have recognized the capacity of an individual unit owner to bring a derivative action on behalf of the condominium (*see Cigal v Leader Dev. Corp., supra; Cote v Levine,* 52 Mass App Ct 435, 439-440, 754 NE2d 127, 131 [2001]; *Rogers & Ford Constr. Corp. v Carlandia Corp., supra*). The courts of Florida, in particular,

have held, in the absence of statutory authority, that derivative actions by condominium unit owners may be permitted in the discretion of the court (*see Rogers & Ford Constr. Corp. v Carlandia Corp., supra* at 1353), specifically on the ground that the courts have independent power to recognize such capacity, because the derivative action was born of common law (*see Larsen v Island Devs., Ltd., supra* at 1072, citing *Cohen v Beneficial Industrial Loan Corp., supra,* 337 US 541, 548 [1949]). The same result is warranted here.

There is also a practical logic to permitting unit owners to sue derivatively on behalf of the condominium. Condominiums operate in essentially the same manner as cooperatives, despite the differences in legal structure (*see Matter of Levandusky v One Fifth Ave. Apt. Corp., supra*) and the fiduciary responsibility of members of the board of managers of a condominium is governed by the same legal standard as the responsibility of a corporate director of a cooperative apartment (*id.*). Since the owner of shares in such a corporation may bring a derivative action, albeit as authorized by statute (*see Fe Bland v Two Trees Mgt. Co., supra*), there is no reason, in light of the common-law nature of the derivative action, to refuse to recognize the same capacity for the owners of condominium units.

Thus, for all of these reasons, we conclude that while a condominium unit owner may not, as a general matter, sue individually to protect his or her interest in the common elements of the condominium, a unit owner may bring a derivative action on behalf of the condominium. The plaintiffs' eighth cause of action on behalf of the condominium, alleging waste and mismanagement, must therefore be reinstated insofar as asserted against the board-member defendants, and the managing agent defendants. Reinstatement of the ninth cause of action, alleging, on behalf of the condominium, professional liability on the part of the accountants, is required as well, since the accountants have been retained by and are contractually obligated to the condominium, and there is no dispute that an action to recover damages resulting from professional malpractice could have been brought against them by the board of managers (*see Carella v Scholet,* 5 AD3d 972, 975 [2004]; *Falcigno v Tesel,* 2003 NY Slip Op 50004[U] [Sup Ct, NY County, Jan. 7, 2003]). As to the unrelated Nussbaum entities, however, the eighth cause of action was properly dismissed, as there are no allegations set forth in that cause of action that would state a claim against those entities.

## Fiduciary Duty

■ In their fourth cause of action, the plaintiffs allege that the condominium defendants, the managing agent defendants, and the accountants breached their fiduciary duties to the unit owners by committing various acts of financial mismanagement, concealing financial records, failing to provide accurate records, failing to maintain the reserve fund, failing to account for condominium funds, misappropriating condominium funds, and engaging in self-dealing. The Supreme Court granted that branch of the defendants' cross motion which was for summary judgment dismissing the breach of fiduciary duty claims against the managing agent defendants, the accountants, the sponsor, and the owner. Recognizing, however, that the members of the board do indeed owe a fiduciary duty to the plaintiffs as unit owners (*see Board of Mgrs. of Acorn Ponds at N. Hills Condominium I v Long Pond Invs., supra; Board of Mgrs. of Whispering Pines at Colonial Woods Condominium II v Whispering Pines Assoc., supra; Board of Mgrs. of Fairways at N. Hills Condominium v Fairway at N. Hills, supra*), the Supreme Court denied the motion as to the board-member defendants, holding that they failed to establish their entitlement to judgment as a matter of law, even under the forgiving business judgment rule applicable to such claims (*see Schoninger v Yardarm Beach Homeowners' Assn., supra; see also Board of Mgrs. of Fairways at N. Hills Condominium, supra* at 326; *Frisch v Bellmarc Mgt., supra* at 389; *cf. Matter of Levandusky v One Fifth Ave. Apt. Corp., supra*).

There is no fiduciary relationship between the sponsor and the condominium (*see Board of Mgrs. of Acorn Ponds at N. Hills Condominium I v Long Pond Invs., supra*). Thus, insofar as the fourth cause of action is asserted against the sponsor, therefore, it was properly dismissed.

Whether the managing agent defendants and accountants owe a fiduciary duty to the plaintiffs, however, is an open issue. For the reasons that follow, we conclude that the managing agent is a fiduciary as to the condominium, but not as to the individual unit owners. We decline, however, to recognize a fiduciary relationship between the accountants and the individual unit owners. Nevertheless, the complaint alleges that the managing agent defendants and the accountants aided and abetted the board-member defendants in their alleged breaches of their fiduciary duty to the unit owners. Since aiding and abetting the breach of a fiduciary obligation is a recognized basis for

liability, the Supreme Court should not have dismissed the plaintiffs' breach of fiduciary duty claim against the managing agent defendants and the accountants, as the plaintiffs have raised a triable issue of fact in that regard.

## A. The Managing Agent Defendants

A fiduciary, in the context of condominium management, is

> "one who transacts business, or who handles money or property, which is not his [or her] own or for his [or her] own benefit, but for the benefit of another person, as to whom he [or she] stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part" (*Board of Mgrs. of Fairways at N. Hills Condominium v Fairway at N. Hills, supra* at 325 [internal quotation marks omitted]).

Pursuant to the bylaws of the condominium at issue here, the board may delegate to the managing agent its powers with respect to the operation and maintenance of the common elements, the collection of common charges, the employment and dismissal of condominium personnel, the purchase of insurance, and the making of repairs necessitated by fire or other casualty. By this definition, the managing agents here, thus, were or are fiduciaries as to the condominium (*see e.g. Board of Mgrs. of Regal Walk Condominium I v Community Mgt. Servs. of Staten Is.,* 226 AD2d 414 [1996]).

There is nothing in the bylaws, however, that authorizes the managing agent to hold any personal funds of the unit owners or otherwise act on their behalf, and the plaintiffs do not allege any other basis for a fiduciary relationship. The only property of the unit owners over which the managing agent has any responsibility is the unit owner's undivided interest in the common elements of the condominium. Thus, any claim the unit owners may have to hold the managing agent to the standard of a fiduciary arises, if at all, from their interests in the common elements. Since, for the reasons stated above, the plaintiffs have no standing to bring a claim individually on the basis of their interests in the common elements or finances of the condominium, their assertion of fiduciary interests on that basis must fail as well. As noted, in the particular circumstances presented here, the absence of a fiduciary duty flowing directly from the managing agent to the unit owners does not mean that the plaintiffs' breach of fiduciary duty claims insofar as asserted against the managing agents should have been dismissed.

There is no dispute that the Nussbaums, as members of the board, owe a fiduciary duty to the individual unit owners in their management of the common property (*see Board of Mgrs. of Acorn Ponds at N. Hills Condominium I v Long Pond Invs., supra; Board of Mgrs. of Whispering Pines at Colonial Woods Condominium II v Whispering Pines Assoc., supra; Board of Mgrs. of Fairways at N. Hills Condominium v Fairway at N. Hills, supra*). The managing agent defendants are alleged to be the Nussbaums' alter egos, at least for the purposes of managing the condominium. Assuming that allegation to be true, as we must at this stage in the litigation (*see McNulty v City of New York,* 100 NY2d 227, 230 [2003]; *Gaddy v Eyler,* 79 NY2d 955 [1992]; *Boyd v Rome Realty Leasing Ltd. Partnership,* 21 AD3d 920, 921 [2005]; *Erikson v J.I.B. Realty Corp.,* 12 AD3d 344, 344-345 [2004]), the managing agent defendants cannot deny that they had knowledge of, or claim that they did not participate in, the alleged breaches (*see In re Bennett Funding Group, Inc.,* 336 F3d 94, 100 [2003]; *cf. Matter of Y & O Holdings [NY] v Board of Mgrs. of Exec. Plaza Condominium,* 278 AD2d 173 [2000]; *First Capital Asset Mgt. v N.A. Partners,* 300 AD2d 112, 116 [2002]; *Trans Intl. Corp. v Clear View Tech.,* 278 AD2d 1, 1-2 [2000]).

One who aids and abets a breach of a fiduciary duty is liable for that breach as well, even if he or she had no independent fiduciary obligation to the allegedly injured party, if the alleged aider and abettor rendered "substantial assistance" to the fiduciary in the course of effecting the alleged breaches of duty (*Wechsler v Bowman,* 285 NY 284, 290 [1941]; *see Kaufman v Cohen,* 307 AD2d 113, 125-126 [2003]; *DePinto v Ashley Scott, Inc.,* 222 AD2d 288, 290 [1995]; *Fallon v Wall St. Clearing Co.,* 182 AD2d 245, 251 [1992]; *Marcus v Marcus,* 92 AD2d 887 [1983]). Although a claim of aiding and abetting a breach of fiduciary duty may not be stated in the absence of an allegation that "the defendant had actual knowledge of the breach of duty" (*Brasseur v Speranza,* 21 AD3d 297, 299 [2005]), it is impossible for the alter ego of a fiduciary to dispute an allegation of aiding and abetting, since the alter ego, of necessity, has actual knowledge of the fiduciary's intentions and conduct. Thus, in light of the relationship of the managing agent defendants to the Nussbaums, the plaintiffs raised a triable issue of fact as to whether the managing agent defendants aided and abetted the Nussbaums in breaching a fiduciary duty owed to the individual unit owners (*see Leo V. Berger Grantor Trust No. 1 v Adell,* 292 AD2d

295 [2002]) and that branch of the motion which was to dismiss the breach of fiduciary claims insofar as asserted against the managing agent defendants should have been denied.

## B. The Accountants

■ The liability of the accountants presents a more complex question. As a general rule, accountants are not fiduciaries as to their clients (*see Friedman v Anderson,* 23 AD3d 163, 166 [2005]; *DG Liquidation v Anchin, Block & Anchin,* 300 AD2d 70, 71 [2002]; *Nate B. & Frances Spingold Found. v Wallin, Simon, Black & Co.,* 184 AD2d 464, 465 [1992]), except where the accountants are directly involved in managing the client's investments (*see Bingham v Zolt,* 66 F3d 553, 562 [1995], *cert denied* 517 US 1134 [1996]; *Lavin v Kaufman, Greenhut, Lebowitz & Forman,* 226 AD2d 107, 109 [1996]; *Kanev v Turk,* 187 AD2d 395 [1992]). Since there is no allegation that the accountants played such a role for the condominium here, the accountants are not subject to breach of fiduciary duty claims on that basis (*see In re Warnaco Group, Inc. Sec. Litig. [II],* 388 F Supp 2d 307, 318-319 [SD NY 2005]; *Tal v Superior Vending, LLC,* 20 AD3d 520 [2005]; *Hamer v Chessman,* 129 AD2d 491, 492 [1987]).

The absence of a direct fiduciary relationship, however, does not immunize the accountants from the plaintiffs' claims here. Where, as here, it is demonstrated, prima facie, that the accountants had complete knowledge of the misuse of condominium funds, and were indispensable to the board-member defendants in their efforts to conceal the misuse of those funds, the accountants may be held liable for aiding and abetting the breach of fiduciary duty by the board-member defendants (*see Operative Cake Corp. v Nassour,* 21 AD3d 1020 [2005]; *Don Buchwald & Assoc., Inc. v Marber-Rich,* 11 AD3d 277 [2004]; *Bestolife Corp. v American Amicable Life,* 5 AD3d 211, 216-217 [2004]; *Shearson Lehman Bros. v Bagley,* 205 AD2d 467 [1994]; *Jones v PriceWaterhouseCoopers LLP,* 6 Misc 3d 1014[A], 2004 NY Slip Op 51789[U] [2004]).

The fourth cause of action should therefore be reinstated insofar as it is asserted against both the managing agent defendants and the accountants, as should the seventh cause of action, which asserts the same breach of fiduciary claims derivatively on behalf of the condominium. As to those defendants who were neither members of the board, nor the condominium's managing agents or accountants (i.e., the sponsor, the

owner, and the unrelated Nussbaum entities), however, there is no basis for the plaintiffs' claim that they breached any fiduciary duty owed to the condominium, and the Supreme Court properly dismissed the seventh cause of action insofar as asserted against them.

## Accountants' Professional Liability

■ The Supreme Court dismissed the fifth and sixth causes of action on the basis of the defendants' argument that lack of privity of contract precludes a unit owner from asserting a professional liability claim against the accountants who have been retained by the condominium. This appears to be an issue of first impression in New York. For the reasons that follow, we conclude that the Supreme Court misread the law applicable to the privity-based limitations on accountants' professional liability in dismissing those claims. We hold that because the accountants stand in a relationship with respect to the owners of the condominium units that is sufficiently close to privity, a unit owner may bring an action individually against the accountants for negligence. Therefore, we reinstate the fifth and sixth causes of action.

The plaintiffs' claims against the accountants allege intentional and reckless conduct, as well as negligence. Lack of privity is not a bar to an action against an accountant for intentional misrepresentation (*see Ultramares Corp. v Touche,* 255 NY 170, 179, 189 [1931]; *Houbigant, Inc. v Deloitte & Touche,* 303 AD2d 92, 95 [2003]; *Bank of Tokyo Trust Co. v Friedman,* 197 AD2d 354 [1993]), or the grossly negligent or reckless conduct that is its functional equivalent for these purposes (*see State St. Trust Co. v Ernst,* 278 NY 104, 111-112 [1938]; *Rotterdam Ventures v Ernst & Young,* 300 AD2d 963, 964 [2002]; *Curiale v Peat, Marwick, Mitchell & Co.,* 214 AD2d 16, 28 [1995]; *Ryan Ready Mixed Concrete Corp. v Coons,* 25 AD2d 530, 530 [1966]).

> "A representation certified as true to the knowledge of the accountants when knowledge there is none, a reckless misstatement, or an opinion based on grounds so flimsy as to lead to the conclusion that there was no genuine belief in its truth, are all sufficient upon which to base liability. A refusal to see the obvious, a failure to investigate the doubtful, if sufficiently gross, may furnish evidence leading to an inference of fraud so as to impose liability for losses suffered by those who rely on the balance

sheet" (*State St. Trust Co. v Ernst, supra,* 278 NY at 112; *see Foothill Capital Corp. v Grant Thornton, L.L.P.,* 276 AD2d 437 [2000]).

Although the allegations of intentional and reckless conduct by the accountants set forth in the complaint are somewhat general, they are sufficient at this stage in the action to avoid dismissal (*see Houbigant, Inc. v Deloitte & Touche, supra* at 97).

Turning to the negligence claims, it is no doubt true that the "assault upon the citadel of privity" was largely repelled by the Court of Appeals in *Ultramares Corp. v Touche* (*supra* at 180), at least with respect to liability for negligence. Accountants may nonetheless be held liable in certain circumstances for negligent misrepresentations made to parties with whom they have had no contractual relationship, but who have relied to their detriment on inaccurate financial statements prepared by the accountant (*see Credit Alliance Corp. v Arthur Andersen & Co.,* 65 NY2d 536, 551 [1985]; *Bernstein v Andersen & Co.,* 210 AD2d 193, 194 [1994]). In order to establish such liability, the relationship between the accountant and the party must be found to approach privity, through a showing (1) that the accountants were aware that financial reports would be used for a particular purpose, (2) in furtherance of which a known party was intended to rely, and (3) that there was some conduct on the part of the accountants linking them to that party, which evinces the accountants' understanding of that party's reliance (*see Credit Alliance Corp., supra* at 551).

"Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact" (*Kimmell v Schaefer,* 89 NY2d 257, 264 [1996]). Nevertheless, on this motion for summary judgment, the defendants established their prima facie entitlement to judgment as a matter of law by demonstrating that the accountants' contract was with the board of managers, not the individual unit owners (*see William Iselin & Co. v Mann Judd Landau,* 71 NY2d 420, 425 [1988]). The burden thus shifted to the plaintiffs "to demonstrate a relationship with the accounting firm 'sufficiently approaching privity' " (*Hamond v Marks Shron & Co.,* 249 AD2d 364, 365 [1998]). The plaintiffs have met that burden here.

The defendants predicate their argument for dismissal on *Security Pac. Bus. Credit v Peat Marwick Main & Co.* (79 NY2d 695 [1992] [hereinafter *Security Pacific*]), in which the Court of Appeals held that a single telephone call from a prospective

lender to the auditor of a corporation, in response to which the auditor disclosed a financial report of the corporation, was insufficient to establish the third element of the *Credit Alliance* test. The Court of Appeals characterized its holding this way:

> "[T]he record indicates that the primary, if not exclusive, end and aim of the [accountant's] audit was for use in the [client's] audit report as required by Federal law for a publicly held company. While [the accountant] knew the identity of the specific party, SPBC, the complaint and supporting documents fail to allege or demonstrate [the accountant's] awareness of any other 'particular purpose' for their services, or conduct on the part of [the accountant] creating an 'unmistakable relationship' with SPBC" (*id.* at 707 [citation omitted]).

This is not the situation presented with respect to the accountants for the condominium here.

Unlike the plaintiff lender in *Security Pacific,* the condominium unit owners who have brought this claim are not fortuitous beneficiaries of the accountants' opinions. Rather, although they did not hire the accountants, they are, nonetheless, the intended beneficiaries of the accountants' work. The complaint and accompanying affidavits establish that (1) the accountants were hired to represent the condominium's records and provide a yearly audit; (2) they were paid out of the common charges paid by the unit owners; (3) there were numerous communications between the accountants and several unit owners; and (4) in the course of those communications, the accountants learned of the particular identities of the unit owners, expressly reassured them of the accuracy of the accounts, and vouched for the financial security of the condominium. On the basis of these assertions, there is a triable issue of fact as to whether the accountants should have known that the unit owners would rely upon those communications for the purposes of managing their own interests as well as the common interest shared by all unit owners.

Rather than *Security Pacific,* this case is governed by *Glanzer v Shepard* (233 NY 236 [1922]), which presented the question of whether a public weigher of beans could be held liable in negligence to a purchaser whose obligation to pay the seller was directly dependent on the weight established by the weigher. Finding the weigher to be liable to the purchaser for the failure to weigh the beans properly, the Court of Appeals held, per

Judge Cardozo, that "assumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed" (*id.* at 239).

The accountants here stand in a position no different than the bean weighers in *Glanzer v Shepard*. Like the bean weighers, the accountants undertook a duty to act with appropriate professional care in examining the books and records of the condominium, and preparing financial reports that accurately reflected the condominium's financial status. They knew, from the nature of the condominium, if not from their professional experience, that the financial reports they prepared established the basis for the determination as to the amount of the common expenses and, consequently, the common charges that each unit owner would be required to pay. The bylaws of the condominium, in fact, require that the annual report of the receipts and expenditures of the condominium certified by an independent certified public accountant be submitted to the unit owners each year (*see* By-Laws of Royal Kent Condominium, art X, § 1), a provision that is not uncommon in such bylaws (*see* 9 Steinman's Bergerman and Roth, New York Real Property Forms Annotated form 941.3). In addition, it is alleged here that the accountants communicated, on at least one occasion reflected in the record, with unit owners regarding the financial circumstances of the condominium.

The viability of the plaintiffs' claim is confirmed by *White v Guarente* (43 NY2d 356 [1977]), in which the Court of Appeals held that the accountant for a limited partnership may be held directly liable to the limited partners. Addressing a situation very similar to that presented here, in which the accountants were alleged to have misstated financial data and failed to identify substantial cash withdrawals by the general partners, the Court rejected the accountants' argument that their liability was limited to the partnership with whom they had contracted and, in doing so, distinguished this situation from the essentially open-ended liability for negligence that had been rejected in *Ultramares Corp. v Touche* (*supra*). The Court stated:

> "Defendant Andersen's contention, that plaintiff falls beyond the bounds of protected parties, rests primarily on the theory that its contract with the limited partnership circumscribed the extent of its obligation and the outer limits of its care. This reasoning fails to recognize that '[t]he duty of reasonable care in the performance of a contract is not

always owed solely to the person with whom the contract is made . . . It may inure to the benefit of others' . . . While *Ultramares* made it clear that accountants were not to be liable in negligence on the generalized basis that a contract for professional services creates liability in favor of the general populace, this plaintiff seeks redress, not as a mere member of the public, but as one of a settled and particularized class among the members of which the report would be circulated for the specific purpose of fulfilling the limited partnership agreed upon arrangement" (*White v Guarente, supra* at 363 [citations omitted]).

The unit owners in a condominium similarly constitute such a "settled and particularized class," and the requisite elements of the *Credit Alliance* test have been found to be satisfied in similar circumstances (*see Chaikovska v Ernst & Young, LLP,* 21 AD3d 1324 [2005]; *Houlihan/Lawrence, Inc. v Duval,* 228 AD2d 560 [1996]; *Ackerman v Price Waterhouse,* 216 AD2d 123 [1995]; *Bernstein v Andersen & Co., supra* at 194; *Kidd v Havens,* 171 AD2d 336 [1991]). Since the continuing vitality of the rule enunciated in *Glanzer v Shepard* and followed in *White v Guarente* is established (*see Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood,* 80 NY2d 377, 383-385; *Ossining Union Free School Dist. v Anderson LaRocca Anderson,* 73 NY2d 417, 422-426 [1989]; *Chaikovska v Ernst & Young, LLP, supra* at 1325-1326) and the situation presented here falls squarely within the bounds of the rule, the plaintiffs' individual negligence claims against the accountants must be reinstated.

## Individual Claims for Breach of Contract

The first cause of action asserted in the complaint alleges four breaches of contract. First, the complaint asserts that the condominium defendants violated the terms of the offering plan by, among other things, failing to relinquish control of the condominium within a specified period of time. Second, the complaint claims that the defendant Nussbaum Management Corporation breached its agreement, contained in its proposal to serve as the condominium's managing agent, dated February 12, 2001, to "issue monthly income and expense statements to be delivered to all Unit Owners." Third, the plaintiffs allege that the condominium defendants agreed that after the defendant DHN Management, Inc. (hereinafter DHN), had been managing agent for six months, the condominium defendants

would refrain from voting on whether to retain DHN in that capacity, but breached that agreement by instead voting to retain DHN. Finally, the complaint alleges that the condominium and managing agent defendants agreed, at a meeting at the office of the New York State Attorney General on September 6, 2001, to provide to the unit owners various documents with respect to the condominium, including an accounting of all reserve funds, and to participate in the selection of a new managing agent immediately, but failed to keep those promises.

The defendants moved for summary judgment dismissing, inter alia, the breach of contract claims on the ground that the defendants other than the sponsor were not parties to any of the alleged contracts. On such a motion, of course, we view the evidence in the light most favorable to the plaintiffs, as the parties opposing the motion for summary judgment, and draw all reasonable inferences in their favor (*see McNulty v City of New York, supra; Gaddy v Eyler, supra; Boyd v Rome Realty Leasing Ltd. Partnership, supra; Erikson v J.I.B. Realty Corp., supra*). In order to be entitled to summary judgment dismissing the complaint, the defendants are required to "make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Even if such a showing is made, the motion must be denied if the plaintiffs "produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which he [or she] rests his [or her] claim" (*Zuckerman v City of New York,* 49 NY2d 557, 562 [1980]).

Here, the defendants other than the sponsor clearly made a showing of their entitlement to summary judgment dismissing the claims related to breach of the offering plan. There is no dispute that, although the sponsor was a party to the offering plan, the remaining defendants were not. The sponsor is thus liable in contract to satisfy the obligations set out in the offering plan and entered into by each individual unit owner (*cf. 511 W. 232nd Owners Corp. v Jennifer Realty Co.,* 98 NY2d 144, 151 [2002]; *Keh Hsin Shen v Astoria Fed. Sav. & Loan,* 295 AD2d 319 [2002]). The remaining defendants cannot be held liable for a breach of that contract, however, because they were not parties to it (*see Lipton v Unumprovident Corp.*, 10 AD3d 703, 706 [2004]; *Borman v Purvis*, 299 AD2d 615, 616 [2002]; *Lakeville Pace Mech. v Elmar Realty Corp.*, 276 AD2d 673, 675 [2000]). As to them, therefore, summary judgment with respect to the alleged breach of the offering plan was properly granted.

With respect to the breach of contract claims referable to agreements other than the offering plan, however, the plaintiffs, in opposition to the defendants' cross motion for summary judgment, have submitted evidence that several of the defendants were parties to the contracts identified in the complaint. The identity of the obligor, however, is only half of the contract enforcement equation. In order to be entitled to enforce a contractual obligation, a plaintiff must be a party to or an intended beneficiary of the contract (*see Esco Credit Corp. v Diamantis*, 189 AD2d 798 [1993]; *Salm v Sammito*, 111 AD2d 844, 845 [1985], *affd* 66 NY2d 661 [1985]; *Flemington Natl. Bank & Trust Co. [N.A.] v Domler Leasing Corp.*, 65 AD2d 29, 33 [1978], *affd* 48 NY2d 678 [1979]; *see also Cahill v Lazarski*, 226 AD2d 572, 573 [1996]; *Key Intl. Mfg. v Morse/Diesel, Inc.*, 142 AD2d 448, 455 [1988]). As we stated in *Key Intl. Mfg. v Morse/Diesel, Inc. (supra* at 455),

> "[i]t is the intention of the promisee which is of primary importance in ascertaining whether a party is to be considered an intended beneficiary . . . Where performance is to be made directly to a third party, that party is generally deemed an intended beneficiary of the contract and is entitled to enforce it or there is, at least, a presumption that the contract was for the benefit of the third party" (citations and internal quotation marks omitted).

Applying these principles here, we conclude that the unit owners may enforce the September 13, 2001, agreement, to the extent that it imposed obligations running in their favor, such as the provision of relevant documents and the like. The February 12, 2001, agreement, by contrast, was between the defendant Nussbaum Management Corporation and the condominium, and the April 1, 2001, agreement involves a voting commitment to an officer of the condominium, not its individual unit owners. Accordingly, the Supreme Court correctly granted summary judgment dismissing the breach of contract claims asserted by the plaintiffs against the defendants Nussbaum Management Corporation, the owner, and DHN, but incorrectly dismissed so much of the claim against DHN as was based on the September 13, 2001, letter, and involved obligations running directly to the unit owners, which must be reinstated.

## Individual Claims Sounding in Fraud

In their third cause of action, all of the plaintiffs assert a fraud claim against all of the defendants. The defendants moved

to dismiss this claim on the ground that it failed to satisfy the requirement that "the circumstances constituting the wrong shall be stated in detail" (CPLR 3016 [b]), and that the defendants, including the board-member defendants, made no representations to the plaintiffs.

Although an action to recover damages for fraud may be dismissed, as the defendants suggest, for failure to plead the claim in sufficient detail to clearly inform them of the incidents complained of (*see Lanzi v Brooks*, 43 NY2d 778, 780 [1977]), the standard is simply whether the allegations are "set forth in sufficient detail to clearly inform a defendant with respect to the incidents complained of" and this rule of pleading must "not [be] interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be 'impossible to state in detail the circumstances constituting a fraud' " (*id.*, quoting *Jered Contr. Corp. v New York City Tr. Auth.*, 22 NY2d 187, 194 [1968]). Judged by this standard, the allegations are sufficient.

The complaint asserts that the board-member defendants affirmatively concealed the status of the reserve fund by failing to provide regular financial statements as required, concealed their failure to pay the condominium's bills on time, failed to provide any detail of the condominium's receipts and expenditures, held no elections or public meetings of the board and kept no minutes of board meetings, falsely represented that they had deposited 3% of the sponsor's revenues in the condominium reserve fund, withdrew funds from the reserve fund without board approval, and used the condominium's funds to pay for repairs to units owned by their corporations. The complaint further asserts that the board-member defendants raised common charges purportedly in anticipation of a water bill of approximately $45,000, then failed to pay it, while nonetheless representing that the bill had been paid, thereby incurring substantial late charges; that the board-member defendants paid the superintendent with condominium funds to do repairs and improvements to the sponsor's units, on condominium time and with condominium resources; that the board-member defendants paid union fees for two superintendents when the condominium has only one superintendent; that the board-member defendants recorded in the condominium's check register a payment to a vendor named "Pinnacle Restoration," when the check was actually drawn to "Metro Roofing"; and that the board-member defendants offered and paid financial incentives to unit owners to get them to

serve on the board and vote with them, including waiving the defendant Michael Kondrat's late common charge fines without board approval and causing repairs to be performed to his unit at common expense and no charge to him.

■ The allegations of fraud thus go far beyond the mere breach of the offering plan, and instead allege conduct clearly meant to enrich individual board members at the expense of the condominium. Moreover, the complaint specifically alleges that the managing agent defendants aided and abetted the board-member defendants in this fraud, or benefitted by it, and that the accountants derived significant professional fees in assisting the board-member defendants in the course of falsifying necessary documents and financial statements. Hence, the Supreme Court erred in summarily dismissing the fraud cause of action against these defendants as well.

Even if the complaint was not pleaded in sufficient detail, however, it is nonetheless adequate for the purpose of proceeding at this early stage of the litigation. Where a defendant would have "exclusive" knowledge of the details, so that it would be impossible for a plaintiff to obtain access to the information necessary to frame specific allegations (*see Bernstein v Kelso & Co.,* 231 AD2d 314, 320-321 [1997]; *Grumman Aerospace Corp. v Rice,* 196 AD2d 572, 573 [1993]), and the only reason for the lack of detail in the pleadings is a result of the defendant's peculiar knowledge, it is error to grant summary judgment without first allowing for discovery (*see* CPLR 3212 [f]; *Salm v Feldstein,* 20 AD3d 469, 470 [2005]; *Berkowitz v Molod,* 261 AD2d 128, 129 [1999]; *Grossman v Pharmhouse Corp.,* 234 AD2d 918, 920 [1996]). The plaintiffs' third cause of action was therefore dismissed in error.

Tortious Interference with Prospective Economic Advantage

The tortious interference claim by the plaintiff Florenta Caprer, asserted as the plaintiffs' second cause of action, is based upon her allegations that she was prevented from favorably refinancing her mortgage by the fact that the sponsor still owned 30% of the units, and that the defendants failed to respond appropriately to her lender's inquiries with regard to the condominium's financial circumstances, allegedly in retaliation for her complaints about the current apportionment of ownership. The defendants cross-moved, inter alia, for summary judgment dismissing this claim on the ground that Caprer had failed to plead both the name of the lender from which she had sought

financing, and the terms under which she would have been able to refinance but for the defendants' actions. They also argued that she failed to plead that the defendant Richard Nussbaum had knowledge of her attempts to refinance.

To establish a claim of tortious interference with prospective economic advantage, a plaintiff must demonstrate that the "defendant's interference with its prospective business relations was accomplished by 'wrongful means' or that defendant acted for the sole purpose of harming the plaintiff" (*Snyder v Sony Music Entertainment*, 252 AD2d 294, 299-300 [1999]; *see Carvel Corp. v Noonan*, 3 NY3d 182, 190-191 [2004]; *Jim Ball Chrysler LLC v Marong Chrysler-Plymouth, Inc.*, 19 AD3d 1094, 1095 [2005]; *South Fourth St. Props. v Muschel*, 1 AD3d 347, 348 [2003]; *cf. J.S. Gourmet, Inc. v Bretton Woods Home Owners Assn., Inc.*, 11 AD3d 583 [2004]). Because knowledge of the prospective economic relation is an implicit element of interference, the denial by the defendant Richard Nussbaum that he had knowledge of Caprer's proposed refinancing is sufficient to demonstrate his prima facie entitlement to judgment as a matter of law (*see NBT Bancorp v Fleet/Norstar Fin. Group*, 215 AD2d 990, 992-993 [1995], *affd* 87 NY2d 614 [1996]; *see generally Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 94 [1993]).

■ In opposition, however, Caprer avers that the prospective lender telephoned Richard Nussbaum and requested information from him regarding the condominium. Although the latter did not return the calls, Caprer has at least raised an issue of fact as to Richard Nussbaum's knowledge by submitting a copy of his January 14, 2003, letter to the lender, stating that Caprer was current in her common charge obligation, and enclosing a 1993 budget, marked "most recent available." Moreover, the pleading identifies the prospective lender and specifically alleges that the lender denied Caprer's application on the ground that the building was an "unacceptable property" by reason of the sponsor's failure to divest itself of units and the lack of a current budget. As a result, Caprer alleges in her complaint that she was deprived of the economic advantages of refinancing that she would otherwise have been able to enjoy. The Supreme Court thus erred in granting that branch of Richard Nussbaum's cross motion which was for summary judgment dismissing this claim insofar as asserted against him.

## Conclusion

In conclusion, we hold that a condominium unit owner may not, as a general matter, sue individually to protect his or her

interest in the common elements of the condominium, but may bring a derivative action on behalf of the condominium; that the managing agent is a fiduciary as to the condominium, but not as to the individual unit owners; that the condominium's accountants are not fiduciaries as to the individual unit owners, but the plaintiffs' breach of fiduciary duty claim against the managing agent defendants and the accountants here was not properly dismissed because the plaintiffs have raised triable issues of fact with respect to whether the managing agent defendants and the accountants aided and abetted the board-member defendants in their alleged breaches of their fiduciary duty to the unit owners; that because the accountants stand in a relationship with respect to the owners of the condominium units that is sufficiently close to privity, a unit owner may bring an action individually against the accountants to recover damages for negligence; and that the unit owners have raised triable issues of fact that preclude dismissal of their claims sounding in fraud and, to the extent indicated, tortious interference with prospective economic advantage and breach of contract.

Accordingly, the order is modified, on the law, by deleting the provisions thereof granting those branches of the defendants' cross motion which were for summary judgment dismissing so much of the plaintiffs' first cause of action as alleged a breach of a contract dated September 13, 2001, insofar as asserted against the defendant DHN Management, Inc., the second cause of action insofar as asserted by the plaintiff Florenta Caprer against the defendant Richard Nussbaum, the third cause of action insofar as asserted against the defendants Richard Nussbaum, Eric Nussbaum, Michael Kondrat, Morjay Realty Company, LLC, Nussbaum Management Corporation, Nussbaum Realty Corporation, DHN Management, Inc., Kenneth P. Gould, and Glickman & Gould, LLP, the fourth cause of action insofar as asserted against the defendants Nussbaum Management Corporation, Nussbaum Realty Corporation, DHN Management, Inc., Kenneth P. Gould, and Glickman & Gould, LLP, the fifth cause of action, the sixth cause of action, the seventh cause of action insofar as asserted against the defendants Nussbaum Management Corporation, Nussbaum Realty Corporation, DHN Management, Inc., Kenneth P. Gould, and Glickman & Gould, LLP, the eighth cause of action insofar as asserted against the defendants Richard Nussbaum, Eric Nussbaum, Michael Kondrat, Nussbaum Management Corporation, Nussbaum Realty Corporation, and DHN Management, Inc.,

and the ninth cause of action insofar as asserted the defendants Kenneth P. Gould and Glickman & Gould, LLP, and substituting therefor a provision denying those branches of the cross motion; as so modified, the order is affirmed insofar as appealed from.

FLORIO, J.P., KRAUSMAN and LIFSON, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provisions thereof granting those branches of the defendants' cross motion which were for summary judgment dismissing so much of the plaintiffs' first cause of action as alleged a breach of a contract dated September 13, 2001, insofar as asserted against the defendant DHN Management, Inc., the second cause of action insofar as asserted by the plaintiff Florenta Caprer against the defendant Richard Nussbaum, the third cause of action insofar as asserted against the defendants Richard Nussbaum, Eric Nussbaum, Michael Kondrat, Morjay Realty Company, LLC, Nussbaum Management Corporation, Nussbaum Realty Corporation, DHN Management, Inc., Kenneth P. Gould, and Glickman & Gould, LLP, the fourth cause of action insofar as asserted against the defendants Nussbaum Management Corporation, Nussbaum Realty Corporation, DHN Management, Inc., Kenneth P. Gould, and Glickman & Gould, LLP, the fifth cause of action, the sixth cause of action, the seventh cause of action insofar as asserted against the defendants Nussbaum Management Corporation, Nussbaum Realty Corporation, DHN Management, Inc., Kenneth P. Gould, and Glickman & Gould, LLP, the eighth cause of action insofar as asserted against the defendants Richard Nussbaum, Eric Nussbaum, Michael Kondrat, Nussbaum Management Corporation, Nussbaum Realty Corporation, and DHN Management, Inc., and the ninth cause of action insofar as asserted the defendants Kenneth P. Gould and Glickman & Gould, LLP, and substituting therefor a provision denying those branches of the cross motion; as so modified, the order is affirmed insofar as appealed from, with one bill of costs to the plaintiffs payable by the defendants appearing separately and filing separate briefs.