In the Matter of MARIAN GRAY, Appellant, v CANISIUS COLLEGE OF BUFFALO et al., Respondents.

Fourth Department, July 10, 1980

## APPEARANCES OF COUNSEL

*Lipsitz, Green, Fahringer, Roll, Schuller & James (William Feigenbaum* of counsel), for appellant.

*Phillips, Lytle, Hitchcock, Blaine & Huber (Martin F. Idzik* of counsel), for Board of Trustees of Canisius College, respondent.

*O'Shea, Adamson, Reynolds & Napier (John H. Napier* of counsel), for Canisius College and others, respondents.

### OPINION OF THE COURT

SCHNEPP, J.

This appeal focuses on the propriety of a CPLR article 78 proceeding which seeks judicial review of a private educational institution's termination of the services of a tenured faculty member. Petitioner Marian Gray, who requests reinstatement to her faculty position, appeals from a judgment which granted respondents' motion to dismiss her petition.

The respondent Canisius College of Buffalo, New York, is a private independent college governed by a board of trustees. The petitioner was a tenured professor and chairman of the elementary education department of the college. The difficulties between the parties apparently surfaced when Dr. Gray filed a criminal charge against a colleague on the Canisius faculty which was dismissed in the City Court of Buffalo in July, 1975 after a nonjury trial. The acting president of the college then asked petitioner to take a one-year sabbatical leave with pay and to resign. She refused and commenced a civil rights action against the college in the United States District Court. On September 2, 1975 college officials suspended Dr. Gray from her duties with full pay. Following this action, disciplinary procedures against her were invoked— James M. Demske, S. J., president of the college, drafted and served charges on petitioner, and the faculty senate elected a special hearing committee to review the charges. This five-member committee conducted hearings on these charges over an extended period of time and on March 16, 1977 it submitted a written report absolving Dr. Gray and recommending that she "be allowed to proceed with her teaching, research and other work as soon as possible". Father Demske rejected this report, stating his reasons for doing so in writing, and requested the committee to reconsider its findings. On June 27, 1977 the committee reaffirmed its prior decision and recommended that an emergency meeting of the college board of trustees be convened "to consider this matter". This process

followed the procedures promulgated by the American Association of University Professors.

Thereafter, the college authorities and Dr. Gray attempted to negotiate a settlement of the dispute. However, on December 27, 1977 Dr. Gray filed a complaint with the Equal Employment Opportunity Commission charging the college with having discriminated against her on account of her sex. She filed a similar complaint on January 26, 1978 with the New York State Division of Human Rights again charging the college and Father Demske with discrimination on the basis of sex. On February 21, 1978 Father Demske recommended to the college's board of trustees that Dr. Gray's services be terminated. He asked the board to take whatever action it deemed appropriate to review his decision and make a final determination. On April 21, 1978 petitioner, Father Demske and their counsel appeared before an *ad hoc* committee of the board of trustees and Father Demske presented his reasons for recommending the termination of Dr. Gray. On May 2, 1978 the full board met and adopted the following resolution: "RESOLVED: That the Board of Trustees accepts and approves the report of the Ad Hoc Committee to the Board of Trustees with regard to Dr. Marian Gray, and authorizes the President of the College to take such action as is necessary to effect a termination of her services." Dr. Gray was notified of the termination of her contract with Canisius College on August 22, 1978.

By verified petition dated December 15, 1978, Dr. Gray commenced this CPLR article 78 proceeding in which she seeks reinstatement and back pay.[1] She alleges that the respondent college has promulgated a manual entitled "Canisius College Policies and Procedures" which governs some of the terms and conditions of her employment, and that the decision to terminate her was arbitrary and capricious, having been made by the respondents without proof "of all the facts necessary to be proven in order to justify the severe penalty of termination".

---

1. While petitioner claims in her brief that the instant proceeding is one sounding in certiorari, the import of her petition is that she has done nothing which would give the college "cause" to dismiss her and that consequently, since she was a tenured professor, it was not within the respondent's discretion to terminate her employment. It is apparent, therefore, that she is seeking relief in the nature of *mandamus* pursuant either to subdivision 1 or subdivision 3 of CPLR 7803 (see, generally, Siegel, New York Practice, § 561; see, also, *Di Lorenzo v Carey,* 62 AD2d 583, app dsmd 45 NY2d 832, cert den *sub nom. Farrell v Carey,* 440 US 914).

Respondents moved under CPLR 7804 (subd [f]) to dismiss the petition, alleging that it failed to state a cause of action and that the remedies of mandamus and certiorari do not lie against them. In granting respondents' motion to dismiss, Special Term noted that Dr. Gray did not claim that she was not accorded a full hearing or that the determination to dismiss her was not made in accordance with procedures established by the college. The court concluded that a CPLR article 78 proceeding could not be utilized to review what it termed the "discretionary action" of the college.

Historically, a writ of mandamus has been made applicable to corporations, both public and private, because these institutions are creations of the government and "a supervisory or visitorial power is always impliedly reserved to see that corporations act agreeably to the end of their institution, that they keep within the limits of their lawful powers, and to correct and punish abuses of their franchises" *(Matter of Weidenfeld v Keppler,* 84 App Div 235, 237, affd on opn below 176 NY 562). These corporations, having accepted a charter and having thus become a quasi-governmental body (see Siegel, New York Practice, § 558; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7802.01), can be compelled in an article 78 proceeding to fulfill not only obligations imposed upon them by State or municipal statutes but also those imposed by their internal rules (see, e.g., *Matter of Auer v Dressel,* 306 NY 427). Thus, courts have traditionally reviewed the action of private colleges and universities in cases where it was alleged that the institution had failed to follow its own hearing or review procedures in the discipline of a student or the dismissal of a faculty member (see *Matter of Carr v St. John's Univ., N. Y.,* 17 AD2d 632, affd 12 NY2d 802; *Matter of Kwiatkowski v Ithaca Coll.,* 82 Misc 2d 43; *Matter of Bonwitt v Albany Med. Center School of Nursing,* 77 Misc 2d 269; *Matter of Ryan v Hofstra Univ.,* 67 Misc 2d 651; *Matter of Barone v Adams,* 39 Misc 2d 227, revd without reaching question of propriety of article 78 proceeding 20 AD2d 790).

Our courts, however, have also long recognized that the management of educational institutions rests on those with special skills and sensitivities. For this reason, the courts should "only rarely assume academic oversight, except with the greatest caution and restraint, in such sensitive areas as faculty appointment, promotion, and tenure, especially in institutions of higher learning * * * In a professional or

academic milieu subjective judgments necessarily have a proper and legitimate role" *(Matter of Pace Coll. v Commission on Human Rights of City of N. Y.,* 38 NY2d 28, 38; see, also, *New York Inst. of Technology v State Div. of Human Rights,* 40 NY2d 316; *Faro v New York Univ.,* 502 F2d 1229, 1231-1232). Recently, in fact, our Court of Appeals in *Tedeschi v Wagner Coll.* (49 NY2d 652), in reaffirming the principle that a private educational institution is obliged to follow its own rules, limited the extent to which the courts should involve themselves in the affairs of educational institutions. There, the court stated: "[B]ecause matters involving academic standards generally rest upon the subjective judgment of professional educators, courts are reluctant to impose the strictures of traditional legal rules. Though such matters are subject to judicial scrutiny, the issue reviewed in such a case is whether the institution has acted in good faith or its action was arbitrary or irrational." *(Tedeschi v Wagner Coll., supra,* p 658; see, also, *Matter of Olsson v Board of Higher Educ.* 49 NY2d 408.) Manifestly then, "[w]hen a university * * * acts within its jurisdiction, not arbitrarily but in the exercise of an honest discretion based on facts within its knowledge that justify the exercise of discretion, a court may not review the exercise of its discretion" *(Matter of Carr v St. John's Univ., N. Y., supra,* p 634). Conversely, however, if the college or university makes its determination not in the exercise of its sound and honest discretion but rather in bad faith or in a manner which is arbitrary and capricious, this action "could never receive the sanction of a court in which even the semblance of justice was attempted to be administered" *(People ex rel. Cecil v Bellevue Hosp. Med. Coll. of City of N. Y.,* 60 Hun 107, 109, affd on opn below 128 NY 621; see, also, *Tedeschi v Wagner Coll., supra; Matter of Olsson v Board of Higher Educ.,* 66 AD2d 196, revd on other grounds 49 NY2d 408, *supra; Matter of Sofair v State Univ. of N. Y. Upstate Med. Center Coll. of Medicine,* 54 AD2d 287, revd on other grounds 44 NY2d 475; *Connelly v University of Vt. & State Agric. Coll.,* 244 F Supp 156).

The charges lodged by Father Demske against Dr. Gray before the board of trustees can be broadly summarized as follows: (1) Dr. Gray refused to accept the structure and procedures of Canisius College in that she (a) failed to work in concert with her faculty peers and in co-operation with the director of the education division, (b) instituted lawsuits

against a faculty member, the acting president of the college and the college, and (c) filed various complaints alleging that college authorities discriminated against her on account of her sex, thus eroding the atmosphere of faculty friendliness and collegiality; and (2) she rejected offers of reconciliation and filed a new sex discrimination complaint against Father Demske. In essence, she was accused by the college president of (1) manifesting a continuing incapability of working under supervision or in concert with others toward the fulfillment of the goals and purposes of the college and (2) refusing to withdraw her legal actions and complaints. The first of these charges is serious and, if it were properly established before the board of trustees, a determination by that body that it had sufficient cause to dismiss Dr. Gray would have been well within its discretion and thus unassailable in a court of law.

Dr. Gray alleges, however, that the charges against her were "unfounded" and "unproven" before the special hearing committee and that she instituted the legal actions against the respondents because of her belief that her "constitutional and statutory rights were being violated". Further she claims that respondents' decision to terminate her contract of employment was arbitrary and capricious in that the two decisions of the special hearing committee were disregarded.[2] In view of the fact that Dr. Gray claims that the terms and conditions of her employment (which may include her tenure rights) were governed by rules contained in the college manual and not the terms of an employment contract,[3] it appears that the petition raises questions which might properly be resolved in a CPLR article 78 proceeding. When Dr. Gray's petition is viewed as it must be on this motion to dismiss—as if all its allegations are true and in the light most favorable to her *(Hondzinski v County of Erie,* 64 AD2d 864; *Matter of Mattioli v Casscles,* 50 AD2d 1013; *Matter of Lichtensteiger v Housing & Dev. Admin.,* 40 AD2d 810; *Matter of Hassett v Barnes,* 11 AD2d 1089; *Matter of Grimm v City of Buffalo,* 8 AD2d 689)—it appears that she claims that she suffered the loss of her employment simply because she commenced cer-

---

2. We point out that whether the petitioner is entitled to article 78 relief because the board of trustees disregarded the hearing committee's findings is not in issue here. It is apparent from the record that the committee served only in an advisory capacity.

3. It is well settled that article 78 proceedings in the nature of mandamus will not lie to enforce private rights based on contracts *(Matter of Lyon Co. v Morris,* 261 NY 497; *Matter of Corbeau Constr. Corp. v Board of Educ.,* 32 AD2d 958).

tain legal proceedings which cast her employer and one of her colleagues in something less than a favorable light. Clearly, the good faith pursuit of one's legal rights, without more, cannot constitute cause for dismissal and, to the extent that the college's rules may provide that tenured professors may be discharged only for cause,[4] a dismissal on that ground alone simply would not have been within the college's discretion.

Thus, it was error for Special Term to dismiss the petition as a matter of law based upon its bare allegations. "Only after respondents have answered can there be any meaningful disposition of this proceeding" (Johnson v Crown Hgts. Community Corp., 39 AD2d 889), for it is only then that an appropriate inquiry may be made, not for the purpose of substituting the judgment of the court for the judgment and discretion of the respondents, but to determine whether respondents' action in terminating Dr. Gray's services violated the college rules and was arbitrary and capricious, i.e., whether the respondents complied with their own rules concerning tenure and properly exercised their discretion in terminating Dr. Gray's services.

In summary, the threshold question here is whether applicable college rules exist, for in their absence there is no basis upon which an article 78 proceeding may be predicated. It is only when applicable rules exist that the judgment of professional educators becomes subject to judicial scrutiny and that an appropriate inquiry may be made to determine whether

---

4. In New York Inst. of Technology v State Div. of Human Rights (40 NY2d 316, 322-323, supra) the Court of Appeals had occasion to consider the purpose and effect of the tenure system and, in discussing the authority of the Commissioner of Human Rights to direct an educational institution to grant tenure to a teacher, said: "Historically, tenure systems developed as a means to protect academic freedom. In order for the institution to achieve its purposes, 'a pall of orthodoxy' cannot be cast over the classroom. (See Keyishian v Board of Regents, 385 US 589, 603.) Without some position security, professors could be discharged for hidden ideological reasons. A tenure system not only protects individual professors, but serves to provide economic security to the entire faculty so that they might pursue their studies without the fear of intellectual reprisal. (See Developments in the Law—Academic Freedom, 81 Harv L Rev 1045, 1048-1049.) Although statutory tenure systems vary from State to State and private tenure programs differ between private institutions, in all forms tenure encompasses a basic continuity of service; the employing institution has relinquished some of its power to discharge the members of its faculty. (Byse, Academic Freedom, Tenure and the Law: A Comment on Worzella v Board of Regents, 73 Harv L Rev 304, 305-306.) Generally, tenured professors may be discharged only for cause and only with some measure of procedural due process. (See Matheson, Judicial Enforcement of Academic Tenure: An Examination, 50 Wash L Rev 597; cf. Education Law, § 6206, subd 12.)"

the institution abided by its own rules and "whether [it] has acted in good faith or its action was arbitrary or irrational" *(Tedeschi v Wagner Coll.,* 49 NY2d 652, 658, *supra).*

The judgment should be reversed and the motion denied with leave to respondents to answer the petition within 20 days after service of a copy of the order to be entered hereon with notice to entry.

CARDAMONE, J. P., SIMONS, DOERR and MOULE, JJ., concur.

Judgment unanimously reversed, with costs, motion denied with leave to respondents to answer within 20 days after service of a copy of the order entered herein.