*311 OPINION OF THE COURT
Luther V. Dye, J.
In this action seeking, inter alia, a permanent injunction, plaintiff Christ the King Regional High School moves herein for a preliminary injunction restraining the defendant, the Catholic High Schools Athletic Association, Diocese of Brooklyn, from implementing and enforcing a directive of the Principals’ Committee of said association, which suspends plaintiff’s girls’ varsity basketball team from playing in postseason league and tournament play for the 1994/1995 season.
The issue confronting the court on this day, March 10, 1995, is whether movant should be allowed to play tomorrow, Saturday, March 11, 1995 in the Diocese championships and for any games remaining in this season.
Granting or denying the preliminary injunction herein amounts to a determination of the entire action. For that reason the court notified the attorneys on March 8, 1995, that it was prepared to consider the motion as one for summary judgment, and directed them to provide a stipulation of agreed facts and any other documents and affidavits they chose to produce.
The plaintiff is a member of the defendant athletic association and is governed by the association’s constitution and bylaws. Its members are subject to the discipline of its Eligibility and Infractions Committee, whose recommendations for sanctions are, in turn, subject to ratification by the Principals’ Committee. Pursuant to the bylaws, teams of the member schools are restricted to one trip outside the metropolitan area during any competitive season. It is undisputed that the plaintiff’s girls’ basketball team travelled to western Pennsylvania in early December and to Ohio at the end of that month. It further appears that the Eligibility and Infractions Committee of the girls league conducted hearings regarding plaintiff’s violation of the travel rule on January 12, 1995, and on January 18, 1995 made a recommendation to the Principals’ Committee that suspension was not required, and that a sufficient sanction would be to restrict plaintiff’s tournament play for the 1995/1996 season to the confines of the metropolitan area. The Principals’ Committee convened on February 9, 1995 and rejected the Eligibility and Infractions Committee’s determination. In a letter to plaintiff dated February 16, 1995, the president of the Principals’ Committee informed plaintiff that its girls’ varsity basketball team will be suspended from *312 league play for the remainder of this season and for at least one additional season, effective February 22, 1995.
It is well settled that the law of associations accords judicial relief to an association member suspended without adherence to its rules, and the courts of this State have consistently recognized the right to such relief (see, Tedeschi v Wagner Coll., 49 NY2d 652, 659). Whether by analogy to the law of associations, on the basis of a "supposed contract”, or simply as a matter of essential fairness to its members and their students, it has been held that when an association has adopted a rule or guideline establishing the procedure to be followed in relation to suspension, that procedure must be substantially observed (see, Tedeschi v Wayne Coll., supra, at 660). This court recognizes that private educational organizations may to a large extent order their own affairs; but, at the very least, their conduct may not be arbitrary or capricious or violative of the applicable constitutions, bylaws, rules or regulations (see, Matter of Carr v St. John’s Univ., 17 AD2d 632, affd 12 NY2d 802; Matter of Gray v Canisius Coll., 76 AD2d 30).
Section G6 of the girls league bylaws entitled "Procedures for Review of Infractions” is specifically applicable to this case, and provides as follows:
"a. A proceeding under this article shall be commenced by the filing of a notice of infraction by the principal of a member school with the Eligibility and Infractions Committee.
"b. The Committee shall commence an investigation within 14 days of receipt of the notice and shall make a decision regarding penalties or sanctions it deems appropriate within 60 days after the commencement of the investigation.
"c. No decision or enforcement procedure requesting penalties or sanctions shall be implemented without review and ratification by the Principals’ Committee.”
Article V, subdivision (2) (e) of the constitution specifically limits the authority of the Principals’ Committee as follows: "The Principals’ Committee will review and authorize any sanctions recommended by the Eligibility and Infractions Committees of the boys and girls leagues”.
In the opinion of this court, the Eligibility and Infractions Committee is given the exclusive right to investigate alleged infractions and to decide upon penalties or sanctions. The Principals’ Committee is limited to the review and ratification of the Eligibility and Infractions Committee’s recommenda *313 tions, and is not empowered by the constitution or bylaws to supersede and independently assume the fact-finding and penalty-imposing authority of the Eligibility and Infractions Committee.
In light of the foregoing, the court finds that the sanction of suspension imposed by defendant’s Principals’ Committee against plaintiff’s girls’ varsity basketball team was ultra vires, and was arbitrary and capricious because it was meted out without proper authority in violation of defendant’s own constitution and bylaws (see, Section VI of N. Y. State Pub. High School Athletic Assn. v New York State Pub. High School Athletic Assn., 134 AD2d 819; Diaz v Board of Educ., 162 Misc 2d 998; Matter of Friends Academy v Section VIII of N. Y. State Pub. High School Athletic Assn., 154 Misc 2d 1).
Accordingly, plaintiff’s motion, deemed one for summary judgment, is granted, and defendant’s cross motion to dismiss is denied for lack of merit. The defendant is hereby restrained and prohibited from barring and interfering with participation of plaintiff’s girls’ varsity basketball team in postseason tournaments for the 1994/1995 scheduled season.