*260 OPINION OF THE COURT
Ben R. Barbato, J.
In this CPLR article 78 proceeding, petitioner seeks to compel respondent to comply with Mental Hygiene Law § 9.31 (b). Petitioner contends that despite the clear language of the foregoing statute—requiring that respondent in a special proceeding pursuant to Mental Hygiene Law § 9.31 (a) provide a copy of a patient’s record, as defined by Mental Hygiene Law § 9.01, 14 NYCRR 501.2 (a), and Mental Hygiene Law § 33.16 (1)—respondent fails to provide a complete copy of the aforementioned record prior to each and every one of the foregoing hearings. Based on the foregoing, petitioner avers that respondent has failed to perform a duty enjoined upon it by law. Respondent opposes the instant petition and cross-moves for its dismissal. Specifically, respondent contends that because petitioner has not suffered, inter alia, injury by the foregoing alleged conduct, petitioner lacks standing to bring this proceeding such that dismissal is warranted pursuant to CPLR 3211 (a) (3). Additionally, respondent asserts that dismissal is further warranted pursuant to CPLR 3211 (a) (7) inasmuch as Mental Hygiene Law § 9.31 (b) does not require the broad disclosure alleged by petitioner, such that the petition fails to state a cause of action. For this latter reason, respondent contends that even if the petition is not dismissed it must nevertheless be denied.
For the reasons that follow hereinafter, the petition is granted and the cross motion is denied.
According to the petition, in cases arising pursuant to Mental Hygiene Law § 9.31 (a), respondent, a psychiatric facility, has consistently failed to provide certain records prior to the hearing prescribed by Mental Hygiene Law § 9.31 (a) as required by Mental Hygiene Law § 9.31 (b). Specifically, petitioner[1] alleges that when a patient has been involuntarily committed to *261 a psychiatric hospital, like respondent’s, or when such hospital determines that a patient ought to remain involuntarily hospitalized, Mental Hygiene Law § 9.31 (a) requires that petitioner request a hearing to determine whether such patient ought to be hospitalized and/or whether once hospitalized, such patient ought to remain in the hospital against his/her will. Once petitioner files notice requesting a hearing, Mental Hygiene Law § 9.31 (b) requires that respondent provide “a record of the patient to the supreme court . . . [and that a] copy of such . . . record shall also be given the mental hygiene legal service,” the petitioner herein.
Mental Hygiene Law § 9.01 defines “record of a patient” as “consisting] of admission, transfer or retention papers and orders, and accompanying data required by this article and by the regulations of the commissioner” (internal quotation marks omitted). The foregoing regulations state that “[c]ase record, clinical record, medical record, or patient record means clinical record as such term is defined in section 33.16 of the Mental Hygiene Law, whether created or maintained in writing or electronically” (14 NYCRR 501.2 [a]). Mental Hygiene Law § 33.16 (a) (1) in turn, defines “[c]linical record” as “any information concerning or relating to the examination or treatment of an identifiable patient or client maintained or possessed by a facility which has treated or is treating such patient or client.”
Petitioner contends that when a hearing is requested pursuant to Mental Hygiene Law § 9.31 (a), it is respondent’s custom and practice to provide petitioner with portions of a patient’s clinical record, namely, “admission, transfer or retention application papers and orders,” rather than “the patient’s complete clinical record (medical chart),” as required by Mental Hygiene Law § 9.31 (b). The medical chart usually consists of one or two binders and is usually hundreds of double-sided *262 pages in length. Although respondent does not provide petitioner with a complete copy of the medical chart, it nevertheless offers a complete copy of the same into evidence, which copy it brings to court on the date of the hearing.
Based on the foregoing, petitioner contends that in failing to provide it with a complete copy of a patient’s medical chart, as defined by Mental Hygiene Law §§ 9.01, 33.16 (1), and 14 NYCRR 501.2 (a) in any proceeding requiring a hearing pursuant to Mental Hygiene Law § 9.31 (a), petitioner has failed to abide by Mental Hygiene Law § 9.31 (b). Petitioner contends that the foregoing is particularly egregious since respondent always seeks to enter the complete medical chart into evidence at a hearing, thus depriving petitioner of an opportunity to review, make objections, if any, and prepare an appeal. Accordingly, pursuant to CPLR 7801 (1), petitioner seeks to have this court order and compel respondent to abide by Mental Hygiene Law § 9.31 (b) in all future proceedings pursuant to Mental Hygiene Law § 9.31 (a).
Petitioner’s petition is granted insofar as it establishes that in failing to provide petitioner with a complete copy of a patient’s medical chart in any proceeding pursuant to Mental Hygiene Law § 9.31 (a), respondent is violating the clear language and legislative intent of Mental Hygiene Law § 9.31 (b), which when read together with Mental Hygiene Law §§ 9.01, 33.16 (a) (1), and 14 NYCRR 501.2 (a), requires that respondent provide copies of the entire chart not just portions thereof prior to a hearing. While allowing petitioner unrestricted access to the foregoing chart is arguably the pragmatic equivalent of providing copies of the medical chart, Mental Hygiene Law § 9.31 (b) does not prescribe or authorize such act in lieu of the exchange mandated therein.
CPLR 7801 provides a mechanism for judicial review of determinations made by, inter alia, government agencies. Significantly, a writ of mandamus ensures that a corporation, be it public or private, “keep within the limits of [its] lawful powers, and [serves] to correct and punish abuses of their franchises” (Matter of Gray v Canisius Coll. of Buffalo, 76 AD2d 30, 33 [4th Dept 1980] [internal quotation marks omitted]). On an application pursuant to CPLR 7801 (1), the relevant inquiry is “whether the body or officer failed to perform a duty enjoined upon it by law” (CPLR 7803 [1]). Thus, while an article 78 proceeding may not be used to challenge the validity of a statute, a writ of mandamus is a remedy available when it is *263 alleged that respondent failed to abide by valid and lawful legislation and when petitioner establishes a clear right to the relief requested (Matter of Council of City of N.Y. v Bloomberg, 6 NY3d 380, 388 [2006]; Matter of County of Fulton v State of New York, 76 NY2d 675, 678 [1990]). The proponent of such relief meets the foregoing burden when it establishes that the law with which compliance is sought is ministerial rather than discretionary and that the compliance with the law mandates the action petitioner seeks to enjoin upon respondent (Matter of Brusco v Braun, 84 NY2d 674, 679 [1994] [“Thus, the dispositive question on this appeal is whether respondent Braun retains any discretion to withhold a judgment pursuant to RPAPL 732 (3) when a petition proper in form and substance demonstrates grounds for relief and the supporting papers establish proper service on the tenant. We hold that he does not”]; County of Fulton at 678 [Court found that duty imposed upon respondent by law was not discretionary because, “the duty of respondent District is established by ECL 15-2115, which provides that land owned or acquired by the State for river regulating districts shall be assessed and taxed in the same manner as state lands subject to taxation and that the assessments shall be paid by the river regulating district” and that compliance with the law requires the result urged by petitioner (internal quotation marks and emphasis omitted)]). While distinguishing between discretionary and ministerial acts is difficult, the general rule is that “discretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result” (Tango v Tulevech, 61 NY2d 34, 41 [1983]; Verizon N.Y., Inc. v Village of Athens, 43 AD3d 526, 528 [3d Dept 2007]).
Applying well-settled law regarding statutory construction, what a law requires and whether the duty imposed by it are compulsory and bereft of discretion is best determined by looking at the law’s plain language. After all,
“ [i] t is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature. As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof. As we have stated: In construing statutes, *264 it is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998] [internal quotation marks and citations omitted]).
Here, a reading of Mental Hygiene Law § 9.31 (b) establishes that prior to a hearing pursuant to Mental Hygiene Law § 9.31 (a), respondent must exchange “a record of the patient to the supreme court . . . [and that a] copy of such . . . record shall also be given the mental hygiene legal service.” Moreover, Mental Hygiene Law § 9.01 defines “ ‘record’ of a patient” as “consisting] of admission, transfer or retention papers and orders, and accompanying data required by this article and by the regulations of the commissioner,” and thereunder, “[c]ase record, clinical record, medical record, or patient record means clinical record as such term is defined in section 33.16 of the Mental Hygiene Law, whether created or maintained in writing or electronically” (14 NYCRR 501.2 [a]). Mental Hygiene Law § 33.16 (1) defines “[c]linical record” as “any information concerning or relating to the examination or treatment of an identifiable patient or client maintained or possessed by a facility which has treated or is treating such patient or client.” Based on the foregoing, the plain language of the foregoing statutes and rule require that respondent provide petitioner with a complete medical chart prior to a hearing, not just portions thereof. Accordingly, the petition establishes that the duty imposed by Mental Hygiene Law § 9.31 (b) is compulsory rather than discretionary and mandates the action— disclosure—sought by petitioner (Brusco at 679; County of Fulton at 678; Tango at 41; Verizon N.Y., Inc. at 528). Accordingly, contrary to respondent’s assertion, petitioner establishes a clear right to the relief requested thereby warranting the granting of the petition (Council of City of N.Y. at 388; County of Fulton at 678). Nothing asserted by respondent—as will be discussed more fully below—warrants denial, let alone dismissal of the petition.
In rejecting respondent’s position, that Mental Hygiene Law § 9.31 (b) requires an exchange of the complete patient chart rather than merely making it available to said patient or his/ her counsel, the court’s holding is buttressed by a reading of *265 CPLR 3120, which governs disclosure in all civil actions in this state. Notably, unlike CPLR 3120 (1) (i), which allows a party to satisfy its document disclosure obligation by “producing] and permit [ting] the party seeking discovery ... to inspect, copy, test or photograph any designated documents or any things which are in the possession, custody or control of the party or person served,” Mental Hygiene Law § 9.31 (b) requires that respondent “forward forthwith a copy of such . . . record of the patient to the supreme court . . . [and] the mental hygiene legal service.” Clearly, had the legislature intended to have respondent satisfy the disclosure mandate of Mental Hygiene Law § 9.31 (a) by merely making a complete copy of the patient chart available to petitioner, such authorizing language—as it appears within CPLR 3120 (1) (i)—would have been expressly included within Mental Hygiene Law § 9.31 (a).
Respondent’s Cross Motion for Dismissal
Dismissal for Lack of Standing
Respondent’s cross motion seeking dismissal of the instant petition on grounds that petitioner lacks standing is denied. While it is true that petitioner does not have individual standing to bring this action, it nevertheless has organizational standing insofar as it establishes (1) that respondent has failed to and is likely to continue to eschew compliance with Mental Hygiene Law § 9.31 (b) in failing to provide petitioner with complete copies of the medical chart; and (2) that those whom the statute seeks to protect—petitioner’s clients in proceedings pursuant to Mental Hygiene Law § 9.31 (a)—will not seek judicial intervention and, thus, a remedy.
It is well settled that in order to initiate suit, a party must have legal standing to bring an action. On the issue of legal standing the test was initially one focusing on the existence of a legal right, described as follows:
“[t]he court has no inherent power to right a wrong unless thereby the civil, property or personal rights of the plaintiff in the action or the petitioner in the proceeding are affected. The rights . . . affected must be personal as distinguished from the rights in common with the great body of people” (Schieffelin v Komfort, 212 NY 520, 530 [1914]).
Over time the threshold inquiry has evolved so that now the relevant inquiry is whether the proponent of an action has *266 sustained injury-in-fact (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772 [1991]). Under the injury-in-fact analysis, standing exists when the plaintiff has sustained actual injury, meaning that he/she has an actual legal stake in the matter being litigated (id.). In order to establish standing, not only must a plaintiff demonstrate injury-in-fact, meaning actual harm, but he must also establish that the injury alleged falls within certain zones of interest protected by law (Matter of Friedman v Town Clerk of Town of Hempstead, 62 AD3d 699, 700 [2d Dept 2009] [Court dismissed individual petitioner’s claim when she would not suffer direct harm from action at issue]; Caprer v Nussbaum, 36 AD3d 176, 183 [2d Dept 2006]). Generally, an injury is within the requisite zone of interest if the injury sustained falls within the ambit of “concerns sought to be promoted or protected by the statutory provision or recognized common-law relationship pursuant to which a defendant has acted.” (Caprer at 183.) In other words, the injury alleged must be of the kind sought to be prevented by the law that the proponent alleges was violated. Specifically, “a party must show that the in-fact injury of which it complains (its ag-grievement, or the adverse effect upon it) falls within the ‘zone of interests,’ or concerns, sought to be promoted or protected by the statutory provision under which the agency has acted” (Society of Plastics Indus, at 773).
Because “[w]hether a person seeking relief is a proper party to request an adjudication is an aspect of justiciability which, when challenged, must be considered at the outset of any litigation,” whether standing exists is a threshold matter to be resolved at the outset of any litigation (id. at 769; Caprer at 182), and when standing is lacking the “pathway to the courthouse is blocked” (Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 812 [2003]).
Generally, a person can only assert claims on his or her own behalf and as such cannot generally assert claims on behalf of another (Society of Plastics Indus, at 773; Caprer at 182). However, prevailing law recognizes at least two circumstances under which a person has standing to maintain an action on behalf of another. First, a person has third-party standing to maintain an action when the party suing has suffered an injury in fact and seeks to assert the constitutional rights of another (New York County Lawyers’ Assn. v State of New York, 294 AD2d 69, 74 [1st Dept 2002]). Specifically, third-party standing exists when a party demonstrates “(1) the presence of some substantial relationship between the party asserting the claim *267 and the rightholder, (2) the impossibility of the rightholder asserting his own rights, and (3) the need to avoid a dilution of the parties’ constitutional rights” {id. at 75). Second, a party can establish organizational standing when it establishes that absent the suit brought by the organization, the actions by the party against whom relief is sought would otherwise be exempt from judicial review (Grant v Cuomo, 130 AD2d 154, 159 [1st Dept 1987], affd 73 NY2d 820 [1988]). Accordingly, the proponent of organizational standing need not establish injury-in-fact but must merely establish that a party has failed to comply with a statute and that those whom the statute seeks to protect will not seek judicial intervention and, thus, a remedy {id.). In Grant, where organizational plaintiffs sued, inter alia, the City and State asserting that defendants violated their obligations to provide protective and preventive services under the Child Protective Services Act of 1973 and the Child Welfare Reform Act of 1979, the Court of Appeals concluded that plaintiffs had established organizational standing because
“[a]s the defendants correctly argue, the claim of the organizational plaintiffs to have suffered an injury by way of an added burden on their resources is presented in general terms only. On the other hand, we cannot ignore the obvious fact that if organizations of this kind are denied standing, the practical effect would be to exempt from judicial review the failure of the defendants, here conceded, to comply with their statutory obligations. Manifestly, the abused children are not themselves able to seek a judicial remedy, nor is it likely that parents or caretakers, the objects of the claims of abuse or maltreatment, would undertake to secure a remedy. Given the obvious reality that the protection of abused or maltreated children is a central concern of our society, and given the historic relationship of organizations concerned with the care and protection of children to the goals sought to be achieved by the relevant statute, we are persuaded that Special Term was justified in denying the motion to dismiss as to the organizational plaintiffs” {id. at 159).
CPLR 3211 (a) (3) authorizes the dismissal of an action when “the party asserting [a] cause of action has not legal capacity to sue.” While not explicitly stated in the statute, a motion to dismiss for lack of standing is properly considered a motion to *268 dismiss pursuant to CPLR 3211 (a) (3) (Matter of Friedman v Town Clerk of Town of Hempstead, 62 AD3d 699, 699 [2d Dept 2009] [Motion pursuant to CPLR 3211 (a) (3) granted when petitioners lacked standing to sue]; Hirschfeld v Hogan, 60 AD3d 728, 729 [2d Dept 2009]).
Here, the court agrees with respondent and finds that petitioner lacks individual standing because Mental Hygiene Law § 9.31 (b) and its disclosure mandate is patently intended to protect the rights of patients in proceedings pursuant to Mental Hygiene Law § 9.31 (a) by ensuring that they are provided with the very records which generally form the basis of any application under Mental Hygiene Law § 9.31 (a). Indeed, it is hard to fathom how such patients could challenge involuntary confinement without a complete copy of the respective patient’s chart. Thus, any injury for the failure to provide the foregoing chart befalls the patient and not petitioner.
Notwithstanding the foregoing, on this record, it is clear that petitioner has organizational standing to bring and maintain this action. As noted above, the proponent of organizational standing need not establish injury-in-fact and need only demonstrate that a party has failed to comply with a statute and that those whom the statute seeks to protect will not seek judicial intervention and, thus, a remedy (Grant at 159). Here, as discussed above, it is clear that Mental Hygiene Law § 9.31 (b) requires broad and comprehensive disclosure, requiring that respondent provide patients and their counsel a complete copy of said patient’s medical chart. It is also clear, that respondent has and continues to refuse to abide by the clear unequivocal mandate of the foregoing statute. Additionally, since pursuant to Mental Hygiene Law § 47.01 (a), petitioner is charged with providing legal assistance to patients and is required “[t]o initiate and take any legal action deemed necessary to safeguard the right of any patient or resident to protection from abuse or mistreatment, which may include investigation into any such allegations of abuse or mistreatment of any such patient or resident” (Mental Hygiene Law § 47.03 [e]), petitioner is obligated to protect the interests of such patients in proceedings pursuant to Mental Hygiene Law § 9.31 (a). This petition, of course, is an extension of that duty. More importantly, like the court in Grant, this court concludes that the patients who petitioner represents—many of whom are alleged to be afflicted by psychiatric injuries—have not and will not initiate a proceeding such as this one to compel respondent to comply with Mental Hygiene Law § 9.31 (b).
*269 Dismissal for Failure to State a Cause of Action
Respondent’s cross motion to dismiss the petition on grounds that it fails to state a cause of action is denied. Taking all allegations in the petition as true and upon a reading of the relevant case law and statutes, the petition establishes that respondent has and continues to violate the clear mandate prescribed by Mental Hygiene Law § 9.31 (b), requiring respondent to provide petitioner, in all cases pursuant to Mental Hygiene Law § 9.31 (a), with a complete copy of the respective patient’s medical chart. Accordingly, the petition does state a cause of action pursuant to CPLR 7801 (1).
On a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7) all allegations in the complaint[2] are deemed to be true (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]; Cron v Hargro Fabrics, 91 NY2d 362, 366 [1998]). All reasonable inferences which can be drawn from the complaint and the allegations therein stated shall be resolved in favor of the plaintiff {Cron at 366). In opposition to such a motion a plaintiff may submit affidavits to remedy defects in the complaint (id.). The court’s role when analyzing the complaint in the context of a motion to dismiss, is to determine whether the facts alleged fit within any cognizable legal theory (Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001]). In fact, the law mandates that the court’s inquiry be not limited solely to deciding whether plaintiff has pleaded the cause of action intended, but instead, the court must determine whether the plaintiff has stated any cognizable cause of action (Leon v Martinez, 84 NY2d 83, 88 [1994] [“(T)he criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one”]).
Here, as discussed at length above, the petition establishes that in failing to provide respondent with a complete copy of a patient’s medical chart in any proceeding pursuant to Mental Hygiene Law § 9.31 (a), respondent violates the clear language and intent of Mental Hygiene Law § 9.31 (b), which when read together with Mental Hygiene Law §§ 9.01, 33.16 (1), and 14 NYCRR 501.2 (a), requires that respondent provide copies of the entire chart not just portions thereof prior to hearing. Ac *270 cordingly, the petition states a cause of action. It is hereby ordered that upon service of a copy of this decision and order with notice of entry, respondent be hereby ordered, in any action brought pursuant to Mental Hygiene Law § 9.31 (a), to provide petitioner with a complete copy of a respective patient’s medical chart prior to a hearing as prescribed by Mental Hygiene Law § 9.31 (b).

. Pursuant to Mental Hygiene Law § 47.01 (a), petitioner
“shall provide legal assistance to patients or residents of a facility as defined in section 1.03 of this chapter, or any other place or facility which is required to have an operating certificate pursuant to article sixteen or thirty-one of this chapter, and to persons alleged to be in need of care and treatment in such facilities or places, and to persons entitled to such legal assistance as provided by article ten of this chapter.”
More specifically, pursuant to Mental Hygiene Law § 47.03 (c), petitioner is charged with providing
“legal services and assistance to patients or residents and their families related to the admission, retention, and care and treat *261 ment of such persons, to provide legal services and assistance to subjects of a petition or patients subject to section 9.60 of this chapter, and to inform patients or residents, their families and, in proper cases, others interested in the patients’ or residents’ welfare of the availability of other legal resources which may be of assistance in matters not directly related to the admission, retention, and care and treatment of such patients or residents.”
More broadly, petitioner is charged with the duty “[t]o initiate and take any legal action deemed necessary to safeguard the right of any patient or resident to protection from abuse or mistreatment, which may include investigation into any such allegations of abuse or mistreatment of any such patient or resident.” (Mental Hygiene Law § 47.03 [e].)

. In an article 78 proceeding, when confronted with a motion to dismiss the petition pursuant to CPLR 3211 (a) (7), all allegations in the petition are deemed to be true and where the allegations are ambiguous, they are resolved in petitioner’s favor (Matter of Castro v Schriro, 140 AD3d 644 [1st Dept 2016]).