[57 NYS3d 479]

LNYC Loft, LLC, Appellant, v Hudson Opportunity Fund I, LLC, et al., Defendants, and Jani Development II, LLC, et al., Respondents.

First Department, August 15, 2017

APPEARANCES OF COUNSEL

*Rosenfeld & Kaplan, LLP*, New York City (*Steven M. Kaplan* of counsel), for appellant.

*Ganfer & Shore, LLP*, New York City (*Steven J. Shore, Ira B. Matetsky* and *Justin R. Bonanno* of counsel), for respondents.

**OPINION OF THE COURT**

Manzanet-Daniels, J.

In *Tzolis v Wolff* (10 NY3d 100 [2008]), the Court of Appeals recognized the right of a member to sue derivatively on behalf of an LLC, leaving it to the courts to further define "[w]hat limitations on the right of LLC members to sue derivatively may exist" (*id*. at 109). This appeal concerns the propriety of the appointment of an outside attorney to serve as the sole member of a special litigation committee (SLC) to determine the merits of the claims asserted in this LLC derivative suit. We recognize that the appointment of an SLC may serve an important purpose in the LLC context and endorse the practice generally, at least where explicitly contemplated by the relevant governing documents. Here, however, where the operating agreements do not explicitly provide for such an appointment, and otherwise do not evince an intent to delegate core governance functions to nonmembers, Mr. Zauderer cannot serve as the sole member of an SLC. We accordingly reverse and remand for further proceedings.

Background

This appeal concerns derivative claims asserted by plaintiff LNYC on behalf of two New York limited liability companies, HRC-NYC Development LLC (HRC) and One York Street Associates, LLC (One York). The underlying dispute concerns the parties' investment in One York, a luxury residential and commercial condominium development located at 1 York Street, in Tribeca. The building is owned entirely by One York, an entity formed in or about 2004. One York in turn is owned by two entities: defendant Jani Development II, LLC (25%), and derivative plaintiff HRC (75%). Jani, which is controlled by defendant Stanley Perelman (not a party to this appeal), serves as One York's sole managing member.

HRC is owned by two members: plaintiff owns 44%, and defendant Hudson Opportunity Fund I, LLC (not a party to this appeal) and its affiliates (Hudson) own 56% and serve as the managing member. Plaintiff LNYC's managing member is nonparty Charles Darwish.

The One York operating agreement, dated March 3, 2004, provides that Jani cannot make a "Major Decision" without the prior written consent of HRC. Such "Major Decisions" include a decision (1) to "amend or modify this Agreement," (2) to "institute or prosecute or settle any material legal, arbitration, or administrative actions or proceedings on behalf of the LLC or any Subsidiary LLC," or (3) to confess a judgment against the LLC in any lawsuit or proceeding or settle any lawsuit or proceeding if such settlement requires payment in excess of $10,000 or an admission of liability.

HRC's operating agreement, dated July 1, 2004, similarly provides that "no Operating Member" (i.e., Hudson and plaintiff LNYC) can undertake a "Major Decision" without the prior written consent of the other operating member. "Major Decisions" include decisions to "enter into any binding agreement or any amendment, modification, supplement or extension of any binding agreement"; to "institute and prosecute . . . or settle any material legal, arbitration, or administrative actions or proceedings on behalf of the LLC"; or to "confess a judgment against the LLC in any lawsuit or proceeding or settle any lawsuit or proceeding which settlement requires a payment by the LLC or requires an admission of liability on the part of the LLC."

According to the complaint, in or about May 2010, Hudson, acting as managing member of HRC, and without the consent

of LNYC as required by the agreement, entered into an amendment to the One York operating agreement that modified the distributions by One York to its members. Plaintiff alleges that Perelman and Jani solicited and induced Hudson to breach the terms of the HRC operating agreement by entering into the amendment so as to benefit Jani and Perelman at HRC's and LNYC's expense, reducing HRC's share of distributions and LNYC's interest in distributions of One York's cash flow.

Plaintiff commenced this action in April 2011, initially asserting only direct claims against defendants and other parties. For five years, the parties engaged in substantive motion practice and extensive discovery. The motion court, by decision and order dated February 9, 2016, allowed plaintiff to amend the complaint to assert five new derivative claims against certain of the defendants. Four claims were asserted on behalf of HRC and one on behalf of One York. The third amended complaint is the current operative complaint asserting derivative claims. Plaintiff alleged that demand on the managing member would have been futile because the managing members of both HRC and One York have conflicts of interest.

The managing members decided to engage an independent individual to act as a special litigation committee. After plaintiff declined to select one of the individuals proposed by defendant, the managing members selected Mark C. Zauderer, Esq., to serve as SLC. Mr. Zauderer is authorized to take such action as he finds appropriate in the exercise of his independent judgment on behalf of the companies with respect to the five derivative causes asserted on behalf of HRC and One York. Specifically, he was granted the authority to "determine the positions and actions that the Companies should take with respect to the claims, considering, among other things, whether the claims have merit, whether they are likely to prevail, and whether it is in the Companies best interest to pursue them." No one suggests that Mr. Zauderer is in any way biased or unqualified or that he is not independent. Plaintiff's objections go solely to the propriety of the appointment of Mr. Zauderer, an outside party, to act as SLC with authority to make recommendations as to the disposition of the derivative claims.

Defendants moved to dismiss the derivative claims on various grounds, or, in the alternative, to stay the proceedings. Plaintiff opposed, asserting that a New York LLC had no authority to appoint an SLC, and, in any event, that the proceedings ought not to be stayed.

The motion court dismissed the fourth and fifth causes of action for breach of contract as against One York. The motion court granted the motion for a stay of litigation of the derivative claims, holding that a New York LLC, like a New York corporation, may appoint an SLC to address derivative claims brought on the LLC's behalf. The motion court rejected plaintiff's argument that the language in the operating agreements concerning "Major Decisions" required the approval of LNYC to appoint an SLC. The motion court noted that such reasoning would likewise have required unanimous approval of plaintiff's commencement of the derivative litigation (which was not sought and not given). The motion court further noted that any such "Major Decision" would in any event be undertaken by the SLC, and not one of the members.

On appeal, plaintiff maintains that defendants were not authorized to designate an SLC to handle their derivative claims. We agree and now reverse. Mr. Zauderer cannot serve as SLC in this case because he is not a manager or member of HRC or One York, and the operating agreements do not otherwise authorize his appointment.

Discussion

In *Tzolis v Wolff* (10 NY3d 100 [2008]), the Court of Appeals recognized the right of a member to sue derivatively on behalf of an LLC. The Court reasoned that the absence of a proposed article concerning derivative suits from the final legislative enactment did not mean that the legislature meant to "render derivative suits nonexistent," observing that "no legislator is known to have favored" "[such] an extreme result" (*id.* at 108-109).

In the years since *Tzolis* was decided, courts have looked to New York statutory and common law on partnerships and corporations in determining certain questions arising in the LLC context. For example, it has been held necessary for a plaintiff suing derivatively on behalf of an LLC to allege presuit demand or demand futility, by analogy to section 626 (c) of the Business Corporation Law (*see Najjar Group, LLC v West 56th Hotel LLC*, 110 AD3d 638 [1st Dept 2013]; *Segal v Cooper*, 49 AD3d 467 [1st Dept 2008]). It has also been held that the criminal acts of a managing member may be imputed to an LLC, notwithstanding the legislature's silence, "considering the corporation-partnership hybrid nature of the LLC" (*JMM Props., LLC v Erie Ins. Co.*, 2013 WL 149457, *6, 2013 US Dist LEXIS 5080, *17 [ND NY, Jan. 14, 2013, No. 5:08-CV-1382

(GTS/ATB)], *affd* 548 Fed Appx 665 [2013]). In *Gottlieb v Northriver Trading Co. LLC* (58 AD3d 550 [1st Dept 2009]), we recognized an LLC's right under the common law to seek an equitable accounting, notwithstanding the defendant's argument that the plaintiff was limited to the remedies set forth in the Limited Liability Company Law. We dismissed such an analysis as "inconsistent with the reasoning in *Tzolis*" (*id.* at 551).

It is true, as defendants assert, that *Tzolis* encouraged courts to fashion remedies to speak to the omissions in the LLC statute. Nonetheless, we decline to uphold the appointment of an SLC where the relevant operating agreements do not delegate managerial authority to nonmembers or nonmanagers or otherwise provide for the appointment of an outsider to serve as an SLC. It is often said that LLCs are "creatures of contract" (*Obeid v Hogan*, 2016 WL 3356851, *5, 2016 Del Ch LEXIS 86, *13 [June 10, 2016, C.A. No. 11900-VCL]), and that "[o]ne attraction of the LLC form of entity is the statutory freedom granted to members to shape, by contract, their own approach to common business relationship problems" (*id.* [internal quotation marks omitted]). Article IV of the New York Limited Liability Company Law makes clear that the operating agreement of an LLC governs the relationships among members and the powers and authority of the members and manager (*see id.* § 417).

The operating agreement for One York provides that defendant Jani is the sole manager and that defendant Perelman "controls all decision making of Jani (i.e., day-to-day and major decisions)." Article 6 of the operating agreement sets forth the "rights, duties [and] obligations" of the manager. Under section 6.3, the managing member was not empowered to undertake certain defined actions (or "Major Decisions") without the consent of HRC, including a decision to "institute or prosecute or settle any material legal, arbitration or administrative action on behalf of the LLC," or to confess a judgment against the LLC in any lawsuit or proceeding or settle any lawsuit or proceeding if such settlement requires payment in excess of $10,000 or an admission of liability.

The HRC operating agreement similarly provides that one operating member is not empowered to undertake a "Major Decision" without the consent of the other operating member, including decisions to "institute and prosecute . . . or settle any material legal, arbitration, or administrative actions or

proceedings on behalf of the LLC"; or to "confess a judgment against the LLC in any lawsuit or proceeding or settle any lawsuit or proceeding which settlement requires a payment by the LLC or requires an admission of liability on the part of the LLC."

Neither operating agreement provides for the delegation of decision-making authority to other than a member, or to an outsider like Mr. Zauderer to serve as SLC. The agreements are explicit that while day-to-day management is vested in the manager, "Major Decisions" need the consent of the other members. We reject the argument that the appointment of the SLC (as opposed to the ultimate decision as to whether to proceed with the derivative litigation) was not a "Major Decision" within the meaning of the agreements. The SLC was specifically granted the authority to "determine the positions and actions that the Companies should take with respect to the claims, considering, among other things, whether the claims have merit, whether they are likely to prevail, and whether it is in the Companies' best interests to pursue them."

That is not to say that the appointment of an SLC would in all cases be improper in the LLC context. Indeed, the members may so provide in the operating agreement, and such provision will be enforced in accordance with those same principles concerning the parties' freedom to contract.* In light of the above, it is unnecessary to address the parties' further conten-

---

\* As defendants note, the Uniform Limited Liability Company Act (ULA Uniform Limited Liability Company Act § 805 [2006] [Last Amended 2013]), which has been adopted by 17 states, would sanction appointment of Mr. Zauderer under these circumstances. The Uniform Act contains provisions authorizing special litigation committees and expressly addressing the situation before us, namely, who may appoint a special litigation committee:

"§ 805. Special Litigation Committee.

"(a) If a limited liability company is named as or made a party in a derivative proceeding, the company may appoint a special litigation committee to investigate the claims asserted in the proceeding and determine whether pursuing the action is in the best interests of the company. If the company appoints a special litigation committee, on motion by the committee made in the name of the company, except for good cause shown, the court shall stay discovery for the time reasonably necessary to permit the committee to make its investigation. . . .

"(b) A special litigation committee must be composed of one or more disinterested and independent individuals, who may be members.

"(c) A special litigation committee may be appointed:

"(1) in a member-managed limited liability company:

tions. We do not find defendants' waiver argument persuasive. Plaintiff is not in a similar position to parties who waive a contractual right to arbitrate disputes. The operating agreements do not provide for the delegation of authority to a nonmember or nonmanager, or for the appointment of a nonmember or nonmanager SLC, and we will not rewrite the parties' agreements to so provide.

Accordingly, the order of the Supreme Court, New York County (Carol R. Edmead, J.), entered September 2, 2016, which, insofar as appealed from as limited by the briefs, granted defendants Jani Development II, LLC and One York Street Associates, LLC's motion to the extent of staying the action pending the conclusion of the investigation of the special litigation committee, should be reversed, on the law, without costs, the appointment of Mark Zauderer to act as special litigation committee vacated, and the matter remanded for further proceedings.

Acosta, P.J., Renwick, Mazzarelli and Andrias, JJ., concur.

Order, Supreme Court, New York County, entered September 2, 2016, reversed, on the law, without costs, the appointment of Mark Zauderer to act as special litigation committee vacated, and the matter remanded for further proceedings.

---

"(A) by the affirmative vote or consent of a majority of the members not named as parties in the proceeding; or
"(B) if all members are named as parties in the proceeding, by a majority of the members named as defendants; or
"(2) in a manager-managed limited liability company:
"(A) by a majority of the managers not named as parties in the proceeding; or
"(B) if all managers are named as parties in the proceeding, by a majority of the managers named as defendants."
New York has not adopted the Uniform Act, though parties are free to incorporate similar provisions into their operating agreements. It should be noted that even in a state subscribing to the Uniform Act, parties can prohibit the use of SLCs by explicit provision in their operating agreement, rendering section 805 inapplicable.