Board of Mgrs. of the 28 Cliff St. Condominium v Maguire (2020 NY Slip Op 06844)





Board of Mgrs. of the 28 Cliff St. Condominium v Maguire


2020 NY Slip Op 06844


Decided on November 19, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 19, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels
Judith Gische Ellen Gesmer Anil C. Singh


Index No. 653115/14 Appeal No. 11981 Case No. 2019-04192 

[*1]Board of Managers of the 28 Cliff Street Condominium, et al., Plaintiffs-Appellants-Respondents,
v
Philomena Maguire et al., Defendants-Respondents-Appellants.



Cross-appeals from the order of the Supreme Court, New York County (Carol R. Edmead, J.), entered September 9, 2019, which, insofar as appealed from, granted defendants' motion for interim indemnification of defendant Philomena Maguire (Maguire) to the extent of determining that Business Corporation Law 722 and 724 apply, but requiring defendant Philomena Maguire (Maguire) to prove good faith in the discharge of her duties as board president.




[*2]


Gische j. 


Plaintiffs are the board of managers of the four-unit, unincorporated condominium association located at 28 Cliff Street in Manhattan and three of its individual unit owners. The individual and corporate defendants are the owners and operators of an ale house that occupies the commercial space on the first floor of the building. From 2005 to 2011, defendant Philomena Maguire (Maguire) was also the president of the condominium board.
On February 24, 2010, a fire broke out in the ale house resulting in extensive damage to the building and leaving the residential unit owners unable to occupy their units for over a year. After the fire, the condominium board filed an insurance claim with its general liability carrier and began the process of restoring the building. A total of $1.2 million was paid by the carrier on the board's claim. Plaintiffs allege that Maguire misappropriated the insurance proceeds by improving and expanding the ale house, almost doubling its seating, and commandeering the boiler room for the ale house's sole use. According to plaintiffs, the repairs made to the rest of the building were "substandard," leaving the lobby floors uneven, the sprinkler system exposed, and the front entrance without a security door. In or about July 2011, Maguire was removed as president of the board.
This action was commenced in October 2014 with plaintiffs asserting 12 causes of action, both individually and derivatively, on behalf of the condominium. In a prior order dated February 22, 2018, not the subject of this appeal, Supreme Court dismissed the derivative claims because plaintiffs had not shown demand futility, and the claims were so intertwined it was impossible to determine which claims were asserted derivatively and which were asserted individually. Consequently, the only claims remaining are for private nuisance and injunctive relief, each asserted against Maguire individually, and defendants' counterclaim relating to unrepaid loans. Maguire separately asserted a counterclaim for "common law" indemnification. Although Supreme Court dismissed this counterclaim, it nonetheless determined that Maguire had a viable claim for legal fees.
Maguire brought a motion for an interim order of indemnification, seeking to recover legal fees she incurred in defending the dismissed derivative claims. She argued that under BCL § 724[c], which allows a court to order a corporation to indemnify its officer or director during the pendency of an action if the corporation refuses to do so voluntarily, she was legally entitled to such relief. Supreme Court granted Maguire's motion for statutory indemnification under the BCL to the extent of ordering a hearing on whether she acted in good faith while serving as president of the condominium. In making its decision, Supreme Court found that although the condominium is not a corporation, but an unincorporated association, "the BCL governs the operation of a condominium where the RPL is silent." The court reasoned that if the plaintiffs in a derivative action can recoup their attorney's fees in pursuing a claim on behalf of the corporation, then so should the defendant officers who were sued, but nonetheless executed their duties in good faith. On appeal plaintiffs challenge the court's legal authority to order [*3]indemnification; while on cross-appeal Maguire challenges whether a good faith hearing is required. Both sides agree this case presents an issue of first impression, calling upon us to examine the relationship among the BCL, the Real Property Law (RPL), and the common law as applied to unincorporated condominium associations.
Unlike cooperative apartment corporations, which are corporate entities owned by shareholders, most condominiums are unincorporated associations (Pomerance v McGrath, 143 AD3d 443, 445 [1st Dept 2016], lv denied 32 NY3d 913 [2019]). Nothing, however, prohibits a condominium from choosing to incorporate. In fact, RPL § 339-v(1)(a) expressly states that "[n]othing contained herein shall bar the incorporation of the board of managers under applicable statutes of this state; such incorporation shall be consistent with other provisions of this article and the nature of the condominium purpose." If a condominium decides to file a certificate of incorporation with the Department of State, a corporation is formed and it becomes a for-profit entity organized under BCL § 102(4). It is not disputed on this appeal that an incorporated condominium is subject to the BCL, as well as the condominium act.
In general, the Condominium Act (RPL § 339-d et seq.) governs and regulates the formation, management, powers and operation of condominium associations under the act, regardless of whether the condominium decides to incorporate or remain an unincorporated association (RPL § 339-f). Among the operations regulated by the Condominium Act are the mechanism for calling meetings, the procedure for electing the board president and officers, the percentage of unit owners (66%) needed to vote in favor of an amendment to the condominium's by-laws, and restrictions on the use of the units and common elements (RPL § 339-v[1][a]-[j]). The statute provides the minimum requirements that every condominium must satisfy.
Condominium governance is also guided by the bylaws adopted by the association. The condominium by-laws are "in essence, an agreement among all of the individual unit owners as to the manner in which the condominium will operate, and which set forth the respective rights and obligations of unit owners, both with respect to their own units and the condominium's common elements" (Board of Mgrs. of Vil. View Condominium v Forman, 78 AD3d 627, 629 [2d Dept 2010][internal quotation marks omitted], lv denied 17 NY3d 704 [2011]). The bylaws can, for instance, provide that a higher percentage of votes than set out in the RPL is needed to amend the by-laws, or set forth restrictions on the leasing of units (see e.g. Demchick v 90 E. End Ave. Condominium, 18 AD3d 383 [1st Dept 2005]). The by-laws can also specify whether and under what circumstances legal fees will (or will not) be paid, and to whom (see Board of Mgrs. of the 25th Charles St. Condominium v Seligson, 126 AD3d 547, 548 [1st Dept 2015] [condominium's bylaws authorized the payment of attorneys' fees only to the condo board, not residential unit owner]).
As relevant to these disputes, article II §14 of 28 Cliff Street condominium's by-laws contains the following provision regarding indemnification of board members:
"The members of the Board of Managers shall not be liable to the Unit Owners for any mistake of judgment, negligence, or otherwise, except for their own individual willful misconduct or bad faith. The Unit Owners shall indemnify and hold harmless each of the members of the Board of Managers against all contractual liability to others arising out of contracts made by the Board of Managers on behalf of the Condominium unless any such contract shall have been made in bad faith or contrary to the provisions of the Declaration or of these By-Laws. It is intended that the members of the Board of Managers shall have no personal liability with respect to any contract [*4]made by them on behalf of the Condominium."
In finding that Maguire was entitled to indemnification, Supreme Court reasoned that the RPL was "silent" and this provision of the bylaws did not sufficiently address the issue of indemnification raised in this action. Although Supreme Court also found that Maguire was not entitled to common-law indemnification (an issue not contested on appeal), it nonetheless determined that pursuant to BCL § 626 and this Court's decision in Tsui v Chou (135 AD3d 597 [1st Dept 2016]), indemnification was permitted. In Tsui this Court reinstated a derivative action that had been dismissed and permitted plaintiffs to "pursue their claim for attorneys' fees to the extent it relates to the breach of contract and breach of fiduciary duty causes of action (see Business Corporation Law § 626 [e])." As discussed herein, the "see" reference to the BCL in Tsui was read too broadly by Supreme Court and we take this opportunity to make a clearer statement.
Maguire relies on three sections of the BCL in support of her argument that an officer or director of an unincorporated condominium association is entitled to indemnification where such relief is not otherwise provided in the RPL or the condominium's own by-aws. These statutes are BCL §§ 626, 722 and 724.
BCL § 626(e) states the following:
"(e) If the action on behalf of the corporation was successful, in whole or in part, or if anything was received by the plaintiff or plaintiffs or a claimant or claimants as the result of a judgment, compromise or settlement of an action or claim, the court may award the plaintiff or plaintiffs, claimant or claimants, reasonable expenses, including reasonable attorney's fees, and shall direct him or them to account to the corporation for the remainder of the proceeds so received by him or them. This paragraph shall not apply to any judgment rendered for the benefit of injured shareholders only and limited to a recovery of the loss or damage sustained by them."
BCL § 722(a) provides as follows:
A corporation may indemnify any person made, or threatened to be made, a party to an action or proceeding (other than one by or in the right of the corporation to procure a judgment in its favor) . . . which any director or officer of the corporation served in any capacity at the request of the corporation, by reason of the fact that he . . . was a director or officer of the corporation, or served such other corporation, partnership, joint venture, trust, employee benefit plan or other enterprise in any capacity, against judgments, fines, amounts paid in settlement and reasonable expenses, including attorneys' fees actually and necessarily incurred as a result of such action or proceeding . . . if such director or officer acted, in good faith, for a purpose which he reasonably believed to be in, or, in the case of service for any other corporation or any partnership, joint venture, trust, employee benefit plan or other enterprise, not opposed to, the best interests of the corporation . . ."
BCL § 724(a) provides for judicially-directed indemnification, even if the corporation fails to provide indemnification, and despite any contrary resolution by the board of shareholders. BCL § 724(c) further specifies that:
"Where indemnification is sought by judicial action, the court may allow a person such reasonable expenses, including attorneys' fees, during the pendency of the litigation, as are [*5]necessary in connection with his defense therein, if the court shall find that the defendant has by his pleadings or during the course of the litigation raised genuine issues of fact or law."
We find that the BCL does not directly control the parties' legal fees dispute. Further, we find that the legal principles contained in these BCL provisions do not concern disputes analogous to those in this case and provide no guidance by which to resolve those disputes.
Contrary to the Supreme Court's analysis, we find that plaintiffs' bylaws expressly address board member indemnification, and set enforceable limitations on when board members are entitled to indemnification. The 28 Cliff Street condominium is not a corporation and although the RPL is silent on the issue of board member indemnification, an unincorporated condominium association can include a provision in its bylaws addressing the issue of indemnification (see LNYC Loft, LLC v Hudson Opportunity Fund I, LLC, 154 AD3d 109, 115 [1st Dept 2017]), and legal fees (see Board of Mgrs. Of the 25th Charles St. Condominium, 126 AD3d at 548). With the assumption of board duties comes a measure of risk, and the absence of an indemnity provision or presence of a limited one, apprises prospective board members of those risks. The 28 Cliff Street condominium bylaws provide for board member indemnification but limits it only to circumstances where the issue is contractual liability.
Plaintiffs' ten dismissed claims alleged that Maguire had, among things, breached her fiduciary duties by misappropriating the insurance proceeds and unjustly enriched herself at plaintiffs' expense by expanding the ale house's capacity. Each of these claims is a tort committed against the condominium; they do not arise out of contractual liability. Since the condominium's bylaws expressly provide that a board member can only recover their legal fees if the lawsuit arises "out of contracts made by the Board of Managers on behalf of the Condominium unless any such contract shall have been made in bad faith," and the claims here do not come within the scope of that provision, Maguire's application for indemnity should have been denied on that basis alone.
The further question raised on appeal is whether and to what extent the BCL may provide an independent right to indemnification, notwithstanding the by-laws. Certainly, where a BCL provision expressly states that it applies to all condominium associations, it must be followed (BCL § 727[a]). Here, the particular provisions Maguire relies upon do not expressly so state and we reject the proposition that the BCL applies across the board to all condominiums when the RPL is silent.
BCL § 626 allows a shareholder in an organized corporation to bring a derivative action on behalf of a corporation. It does not expressly apply to condominiums. There is no statutory equivalent to BCL § 626 in the RPL (Caprer v Nussbaum, 36 AD3d 176, 187 [2d Dept 2006]). Nonetheless, courts have held that derivative actions may be brought on behalf of either an unincorporated condominium association or a corporate condominium (id.). While the right to bring a derivative action on behalf of a corporate condominium may be based upon a direct application of the BCL, the right of an unincorporated condominium association to bring a derivative action is derived from common law. As recognized in the case of Caprer v Nusbaum, "The derivative action . . . is not solely a creature of statute. Rather, the derivative action originated at common law as an equitable proceeding by which shareholders could assert claims necessary to protect their interest in a corporation" (id.). Finding support in the commonlaw, a unit owner may assert a claim derivatively on behalf of an unincorporated condominium because [*6]"[a] derivative action proceeds not on the basis of any individual right, but as an assertion of the interest of the entity by one or more of its owners or members when the management of the entity fails to act to protect that interest" (Caprer at 186). Since the "capacity" of a unit owner to sue on behalf of a condominium is not addressed, let alone circumscribed under the RPL, and the underpinnings of a derivative suit are in the common law, "[c]ondominium unit owners are . . . entitled to the same consideration by the courts as the litigants in those situations in which the courts have historically allowed derivative actions to proceed, independent of any statutory authority" (id at 189). Consistent with this analysis, we clarify that Tsui does not stand for the proposition that where the RPL is silent, the BCL broadly applies to all condominium associations to fill in the gaps. The "see" refence to BCL § 626 (e) in Tsui is merely an acknowledgment that the BCL can be looked at for guidance in interpreting the common law on derivative actions. We have previously looked to the BCL for guidance in applying the common law to condominium associations. For instance, in two notable decisions (Pomerance v McGrath, 104 AD3d 440, 441-442 [1st Dept 2013][Pomerance I]; Pomerance v McGrath, 143 AD3d at 445 [citing Pomerance I] [Pomerance II]), this Court determined that condominium unit owners, like shareholders in a cooperative corporation, can as a matter of common law obtain a list of the names and contact information of other unit owners, and make copies of the condominium records. In deciding the scope of the common-law rights, this Court consulted BCL § 624 and found it useful, but did not apply it.
Neither the common law, nor BCL § 624(e) by analogy, provide the right to recoup attorney's fees to a board member successfully defending against a derivative action. BCL § 626(e) is not an indemnification provision. Rather, it permits legal fees to be paid to an owner who successfully asserts the interest of an entity "when the management of the entity fails to act to protect that interest" (Caprer at 186). Consequently, "an award of attorneys' fees in a shareholders' derivative suit is to reimburse the plaintiff for expenses incurred on the corporation's behalf" (see Glenn v Hoteltron Sys., 74 NY2d 386, 393 [1989]). The corporation is responsible for paying the legal fees, but only where the corporation benefits from the litigation (Glenn, at 393). Neither the BCL nor the common law provide a board member with a reciprocal right to recover legal fees for defending against an unsuccessful derivative action, at least not in the absence of such authorization in the bylaws or some other statutory authority. In this respect, Maguire's claims for her defense costs are inapposite to those in Tsui, where the party seeking fees was the one who brought the derivative action. Maguire argues that indemnification is available in other sections of the BCL, including BCL §§ 722 and 724. Because these provisions contain no express general application to condominiums, and there is no such right at common law, they do not support Maguire's position. In any event, by its own terms even if BCL § 722 were applicable, it provides no basis for the relief sought here. BCL § 722 specifies that a corporation "may" indemnify its officers and directors when made "a party to an action or proceeding (other than one by or in the right of the corporation to procure a judgment in its favor)" (emphasis added). Thus, BCL § 722 permits, but does not require, a corporation to provide officer and director indemnification. Furthermore, it codifies the common law principle that directors or officers may be reimbursed by the corporation for expenses they incurred and amounts they paid in the defense of actions or proceedings - - other than derivative actions (see Baker v Health Mgt. Sys., 98 NY2d 80, 84 [2002]). Consequently, BCL § 722, even if it otherwise applies either directly or by analogy, [*7]does not change the result because in this case the corporation is not obligated to indemnify Maguire for expenses in an action brought against her derivatively.
Because Maguire had no right to reimbursement for her legal fees, she likewise had no right to have such legal fees paid during the pendency of this action. Under BCL § 724, courts are authorized to order indemnification of present or former corporate directors against litigation expenses, notwithstanding the corporation's refusal to do so. Such indemnity, however, is solely to the "extent authorized under section 722." Having found that BCL § 722 does not apply, neither does BCL § 724 because any pendente lite award under BCL § 724 would undermine the limitations set forth in BCL § 722.
In the absence of any authority permitting Maguire to recoup her legal fees, the general common law rule applies, that "attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule" (Hooper Assoc., v AGS Computers, 74 NY2d 487, 491 [1989]). Maguire, alone, is responsible for her legal fees.
In light of the above determination, we do not reach defendants' argument that the motion court should not have conditioned pendente lite indemnification on a finding that Maguire was acting in good faith (LNYC Loft, LLC, 154 AD3d at 115).
Accordingly, the order of the Supreme Court, New York County (Carol R. Edmead, J.), entered September 9, 2019, which, insofar as appealed from, granted defendants' motion for interim indemnification of defendant Philomena Maguire (Maguire) to the extent of determining that Business Corporation Law §§ 722 and 724 apply, but requiring defendant Philomena Maguire (Maguire) to prove good faith in the
discharge of her duties as board president, should be reversed, on the law, and the motion denied in its entirety.
All concur.
Order, Supreme Court, New York County (Carol R. Edmead, J.), entered September 9, 2019, reversed, on the law, and the motion denied in its entirety.
Opinion by Gische, J. All concur.
Manzanet-Daniels, J.P., Gische, Gesmer, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 19, 2020

[*8]